## William Anderson v. L. Dana Hill.

*Internal improvements—Improving channels—Taxation for local purposes— Titles of statutes—Unconstitutional appropriations.*

1. Moneys raised by tax upon a township for a work of internal improvement, and to be applied thereto by a State Board, are not township moneys, even though the township treasurer is the officer designated by law to collect them; and the treasurer and not the township is liable for them if collected.

2. Act 323 of 1881 imposing a tax upon specified townships for the pur-

pose of improving the channel of a stream is void, because it conflicts with the constitutional provision that the State shall not engage in any work of internal improvement unless by granting land therefor.

3. A statute entitled "An act to provide for the straightening or otherwise deepening the channel of the Dowagiac river, in Van Buren county" and providing for a tax to accomplish that purpose is unconstitutional because the title does not cover the provisions of the act; but this is so only because taxation for such a purpose is prohibited by the Constitution; otherwise the provisions for taxation would be covered as a necessary incident to the general object of the law.

4. A statute providing for the payment of money to accomplish a purpose which the payees have already agreed to perform for a sum fixed by an independent contract is unconstitutional because it is a grant of extra compensation, which is prohibited. Const. Art. iv. § 21.

5. Taxation for a local purpose cannot be sustained if the law authorizing it be unconstitutional, even though the tax be voted by a majority, for so far as the minority are concerned its enforcement deprives them of their property without due process of law.

Error to Van Buren.　(Mills, J.)　June 6.—Sept. 23.

Assumpsit.　Plaintiff brings error.　Reversed.

*Lester A. Tabor* for appellant.

*Jerome Coleman* and *Dallas Boudeman* for appellee.　A law appropriating money for the drainage of a swamp in order to preserve the public health is as valid as one to prevent the spread of contagion : Cooley on Taxation, 101 ; Cooley's Const. Lim. 533 ; *Woodruff v. Fisher* 17 Barb. 224 ; *Hartwell v. Armstrong* 19 Barb. 166 ; *Reeves v. Treas. of Wood County* 8 Ohio St. 344 ; *Sessions v. Crunkilton* 20 Ohio St. 349 ; *Anderson v. Kerns Draining Co.* 14 Ind. 199. See *Hager v. Supervisors* 47 Cal. 222 ; *People v. Whyler* 41 Cal. 351 ; *Thomas v. Leland* 24 Wend. 65 ; *Merrick v. Amherst* 12 Allen 500 ; *Gordon v. Cornes* 47 N. Y. 609 ; *Taylor v. Thompson* 42 Ill. 9.

CHAMPLIN, J.　Pickerel Lake, in the township of Decatur, is substantially the head-waters of the north branch of the Dowagiac river, which flows from thence in a southwesterly direction across the township of Decatur, passing through the southeast corner of Hamilton township into Cass county.

This stream is skirted the whole distance with low, marshy ground, from one-half mile to two miles and a half in width, through which the river runs with a sluggish current and in a zigzag course. There are four highways crossing the marsh in the township of Decatur, which are maintained at a considerable expense to the township. In the spring of the year the high water covers the marsh, and recedes in the dry weather of summer, exposing decomposed vegetable matter to the action of sun and wind, causing, in the opinion of several medical witnesses, a malaria which was productive of disease in the vicinity of the marsh.

In 1861 the Legislature of Michigan enacted that two hundred thousand acres of swamp lands of this State be appropriated, to be expended in draining and reclaiming said lands by means of levees and ditches, which land was placed under the direction of the Board of Control, and under their direction it might be appropriated at the minimum price fixed by law for said lands from time to time for that purpose, in such localities and under such rules and regulations as they might prescribe. How. Stat. § 5421. The law also provided that these improvements should be made under contracts which should be awarded to the lowest responsible bidder, who should give good security for the faithful performance of the work, and such contracts should not be let until thirty days' public notice had been given of the time and place of such letting, in some newspaper published in the county and at Lansing, and also by posting in the county, in at least twenty of the most public places.

On the 23d of February, 1882, a contract was entered into between Lyman T. Rawson, local commissioner upon the Dowagiac swamp-land State ditch, in behalf of the State of Michigan, and Alfred J. West, as principal, and Adrian D. Taylor and Thomas H. Bottomley, as sureties, for the construction of a ditch particularly described in said contract, a copy of which contract is as follows:

" This agreement, made the 23rd day of February, A. D. 1882, between Lyman T. Rawson, local commissioner upon the Dowagiac swamp-land State ditch, acting as such commis-

sioner in behalf of the State of Michigan, pursuant to the
statutes of said State authorizing and providing for the con-
struction of said ditch, party of the first part, and Alfred J.
West of Capac, in the county of St. Clair, State of Mich-
igan, as principal, and Adrian D. Taylor of Romeo, in the
county of Macomb, State of Michigan, and Thomas H. Bot-
tomley of Capac, in the county of St. Clair, State of Mich-
igan, as sureties, of the second part :

*Witnesseth, that whereas,* the said commissioner has given
due notice (as required by the act entitled ' An Act to pro-
vide for the drainage and reclamation of swamp lands by
means of State roads and ditches,' approved February 12th,
1859, being Act No. 117 of 1859, and the acts amendatory
thereof) of the time and place of the letting of the contract
for the work hereinafter specified : and at the time and place
specified in such notice, the contract for such work was let
by said commissioner to said principal, he being the lowest
responsible bidder therefor :

Now, therefore, the said parties covenant and agree as fol-
lows, to wit :

The parties of the second part, in consideration of the com-
pensation to be paid by the State of Michigan to the said
principal, as hereinafter provided, covenant and agree that
the said principal shall make, construct and finish, in a good,
substantial and workmanlike manner, on or before the first
day of December, A. D. 1882, a ditch between the following
points, to wit :

Commencing at a point 2.71 chains east of the southeast
corner of section (20) twenty, town (4) four south, of range
(14) west, on the section line ; thence running in a southwes-
terly direction to a point 28.40 chains west of the southeast cor-
ner of section (34) thirty-four, in town (4) four south, of range
(15) fifteen west, on section line, being all of the Dowagiac
swamp-land State ditch, according to the said commissioner's
survey thereof, and being sections numbered 1, 2, 3, 4, 5 and
6, as shown by such survey ; the entire length of said ditch
to be constructed being 5 miles, 23 chains, 36 links, more or
less.

The work of constructing said ditch shall be commenced
by said principal at such point, and prosecuted on such sec-
tions, of two consecutive miles each, as the State swamp-land
commissioner of said State shall direct.   Said ditch to be
seven feet wide at the bottom, with slope of sides one to one.
The excavated earth to be removed two feet from the sides
of said ditch, and depths according to the local commissioner's

survey thereof, as approved by Board of Control. All the work aforesaid is to be well done, to the satisfaction and acceptance of the said local commissioner and of the State swamp-land commissioner of this State, and to be approved by the Board of Control of State swamp-lands. And the said party of the first part covenants and agrees that upon the full completion of the work aforesaid, at the time and in the manner above specified, and the acceptance thereof, he will officially certify such acceptance to the State swamp-land commissioner, and that, upon the certificate of said swamp-land commissioner that said work has been done in accordance with the terms hereof, and the approval of such certificate by a majority of said board, the said principal shall receive, as a compensation in full for said work and materials furnished, the sum of $4000, payable in State swamp-lands, which shall be selected by the said principal, his heirs or assigns, from any unsold swamp lands which may be in market in the Lower Peninsula of the State of Michigan, and applicable to the construction of said ditch, at the minimum price established by law at the time of such selection, and according to the provisions of the statute in such case made and provided, and the rules and regulations of the Commissioner of the State land-office, and patents shall be issued by the State for said lands, according to the laws applicable thereto.

*Provided,* that in every case twenty per cent. of the contract price shall be held in reserve on all acceptances which may be made from time to time, until the final completion and approval of all the work contemplated in this instrument. And the said parties of the second part agree to be bound by all the provisions of the act first above mentioned, and the acts amendatory thereof, and the act providing for the appointment of the State swamp-land commissioner, as well as by all of the conditions of this contract. The following, from section three of said first-named act, is also hereby made a part of this contract:

"The Governor, Secretary of State, Auditor General, State Treasurer, Attorney General, and Commissioner of the State Land-office shall constitute a Board of Control, and shall have power, and it shall be their duty, whenever, in their judgment, the public interest shall require it, to suspend the surveys and operations on any of said roads, or that of any roads to be hereafter constructed under the provisions of this act, and to direct re-surveys, with a view to the selection of more fit and convenient localities for the road; and to direct, from time to time, what work shall be commenced, suspended or

discontinued; and to extend the time for completing the work on any contract, and to correct all errors in contracts, whether of description or otherwise, and to allow interest on the unpaid amount of any existing contract for the payment of money, from and after the completion and acceptance of the work stipulated to be done in said contract; and this provision shall be embodied in every contract under this act."

And the following section 14 of Act 177, Session Laws of 1871, is also made a part of this contract, viz.:

"Every contract approved by said State swamp-land commissioner shall contain a provision that no deficiency of swamp lands shall be so construed as to create any lien or establish any claim against the State, except as to lands above appropriated."

It is also understood that this contract is subject to the approval of the said State swamp-land commissioner, and shall only take effect upon such approval. And it is further agreed and stipulated that if the said Alfred J. West shall, from any cause, fail or neglect to complete and finish said ditch at the time and in the manner provided in this contract, that the said Board of Control shall have the right to declare this contract forfeited, and to direct the aforesaid commissioner to re-let the construction of said ditch to some other responsible party; and it is also understood between the parties hereto that *time* shall be considered and treated as of the essence of this contract; and in case of the failure to complete said ditch as aforesaid by the said first day of December, 1882, he, the said Alfred J. West, does hereby authorize the said Board of Control to cancel this contract, and also hereby relinquishes any right to compensation for work and labor and materials expended under the same. The stipulations and covenants herein contained shall apply to and bind the assignees of the said parties of the second part.

In witness whereof the said parties have hereto set their hands, the day and year first above written.

Lyman T. Rawson,   [L. S.]
Local Commissioner.
Alfred J. West,   [L. S.]
Adrian D. Taylor,   [L. S.]
Thomas H. Bottomley,   [L. S.]"

This contract was approved on March 1st, 1882, by Fred. J. Mack, State swamp-land commissioner, and was filed in his office on the 4th of March, 1882. The job was advertised,

and there was but one bid given, and that was Mr. West's. In 1881 the Legislature passed the following act, namely :

An Act to provide for the straightening or otherwise deep-ening the channel of the Dowagiac river in Van Buren county.

Section 1. *The People of the State of Michigan enact,* That the legal voters of either or both of the townships of De-catur and Hamilton, in the county of Van Buren, are hereby authorized and empowered to vote a sum of money annually for three years from the passage of this act, at the annual township meetings for the election of township officers, by a special tax not exceeding one-half of one per cent. in any one year on the taxable property of such township voting, accord-ing to the equalized valuation thereof for the preceding year, for the purpose of straightening or otherwise deepening the channel of the Dowagiac river in said township.

Section 2. Notice shall be previously given of intention to move for such a vote and appropriation, signed by at least twelve freeholders of such township wherein the vote is pro-posed to be taken, and posted up in five public places therein, ten days previous to the day of such meeting, which said notice shall specify the amount proposed to be raised for such purpose : Provided, that no money shall be raised by tax unless a majority of the qualified electors voting at such meeting shall, by ballot, authorize the same.

Section 3. Said money, if voted, shall be assessed and col-lected in the same manner as other township taxes are, and expended in connection with other funds and means donated to and provided for such river improvement, after a full investigation of its merits, under the supervision of the State board of control of State swamp lands.

Approved March 17th, 1881. (Local Acts 1881, No. 323.)

It appears from the testimony of Lyman T. Rawson that he and Mr. Copley guaranteed to Mr. West that, if he would take the contract from the State, the people of the township should vote and raise $2500, which should be given to him in addition to the compensation which he should receive under his contract from the State ; that there was nothing published to the effect that there should be $2500 donated to the man that took the contract when the proposal for bids was made.

On the 23d of March, 1882, which was more than three weeks

after the contract had been entered into and approved notices signed by Lyman T. Rawson and A. B. Copley together with ten other freeholders of the township, were posted, as required by Act 323, of the intention of the signers to move the qualified electors of the township, at the annual meeting to be held on the 3d day of April, 1882, to grant and vote the sum of $2500, to be appropriated for the purpose of aiding the construction of the Dowagiac State ditch. At the election a vote was taken upon the proposition to raise $2500 by tax upon the township to aid in the construction of the State ditch, and it was carried by a majority of 179 votes— 332 having voted *yes;* 122, *no;* and 21 not voting upon the question. The amount was duly certified to the supervisor and spread upon the tax-roll of 1882, and $90.04 was assessed against the real and personal estate of the plaintiff, liable to be assessed upon such roll. The defendant was township treasurer, and was duly authorized by his warrant to collect this tax. The plaintiff, under protest, paid the tax, under compulsion of legal process, to defendant. Afterwards he brought suit against the township to recover it back, but, before trial, voluntarily discontinued such suit. The defendant settled with the township board and accounted for this money in his hands as township treasurer. Afterwards he was re-elected to the office of township treasurer, and at the time of the commencement of this suit, he had the money collected from plaintiff in his hands.

The first question to be considered is whether, if any action can be maintained at all, it should have been brought against the township, and not against defendant. The circuit judge so held in the court below.

I do not see how the moneys raised under this act can be considered township moneys. They do not belong to the township, and the township authorities have no supervision or control over their expenditure. The same vote which determines to raise the moneys by tax, appropriates them to the purpose specified in the act; and they are to be expended under the supervision of the State Board of Control of State

swamp lands. It is true, they are to be assessed and collected in the same manner as other township taxes are; but this does not make them township moneys. The State and county taxes are assessed and collected in the same manner as township taxes; but that does not make them township moneys. The language of the act merely directs the mode of assessing and collecting, and points out that the money so voted shall be assessed and collected in the same manner as other taxes in the township. The treasurer of the township is made the custodian of the money after he has collected it, until it is paid out or expended under the order and supervision of the State Board of Control of State swamp lands, simply because the law makes no other provision concerning it.

In this respect the case is quite parallel to that of moneys raised for drainage purposes, which it was held were not township moneys, and the township was not liable therefor. *Dawson v. Township of Aurelius* 49 Mich. 479; *Camp v. Township of Algansee* 50 Mich. 4. If, therefore, the defendant has received and holds the money of the plaintiff under circumstances which render it inequitable that he should keep it, there is no good reason why an action for money had and received will not lie to recover it back. Indeed, if this is not the case, then there appears to be no remedy at law to enable a plaintiff to recover money under circumstances such as here disclosed.

The plaintiff insists that Act No. 323 is unconstitutional; and if not, the tax is illegal because it was voted and raised for purposes and under circumstances that render it void as being against public policy. The alleged unconstitutionality of the act is based upon three grounds:

*First.* It violates sec. 20, art. iv, of the Constitution, which provides that "No law shall embrace more than one object, which shall be expressed in its title;" and the argument is that the title to this act has no connection whatever with any of its subsequent provisions. It nowhere informs the public that an appropriation is to be made. It expresses but a single idea,—that the State deems it necessary as one of its internal

improvements to straighten or deepen the channel of the
Dowagiac river; that neither the Legislature nor the public
were informed that it contained provisions under which large
sums of money were to be raised under the guise of a public
tax on the people of a single township to aid the State in one
of its internal improvements.    The reply of defendant's coun-
sel to this point is that "it is very evident that such improve-
ment could not be made without money was raised in some
way to pay for it, and the only mode of raising it is necess-
arily by a tax.    The fact that nothing is said in the title of
the act about the mode of raising the fund would not invalid-
ate the act."    That the straightening or otherwise deepening
the channel of the Dowagiac river in Van Buren county
expresses a work of internal improvement needs no argument.
This is conceded by the counsel for defendant.    He says:
"The State could not, under the Constitution, engage in or
aid in the proposed improvement except by a grant of lands;"
and cites us to article xiv, § 9, of the Constitution.    The State
having the right to engage in and carry on works of internal
improvement by the expenditure of grants to the State of
lands, the obvious inference from the language of the title
would be that the State proposed to provide for the straight-
ening or deepening of the channel of the Dowagiac river by
doing what they constitutionally could do, namely, by appro-
priating land for that purpose.    This is the method she has
provided for making her internal improvements since 1850.
In view of the constitutional restriction, and the long course
of practice pursued by the State in making internal improve-
ments, would any one be justified in assuming that the language
in the title of this act was intended to embrace the object of
permitting the legal voters of the township of Decatur to
vote a tax upon the taxable property of the township to aid
the State in carrying on the work of straightening and deep-
ening the channel of the Dowagiac river?    Yet such was
the real as well as the principal object of the act.    Without
this legislation, the State possessed full power, acting under its
State Board of Control of swamp lands, to make the improve-
ment named in the title of the act.    The State has never

acted, and has had no occasion to act, under the provisions of Act No. 323. The circuit judge, however, finds as a fact that the Dowagiac State ditch, mentioned in the contract above set out, was the same improvement as that contemplated by the special Act No. 323. If this be true, then clearly the object of the act was not expressed in its title, and could not be otherwise than in some manner indicating that the object of the law was to authorize or enable the townships of Decatur and Hamilton to aid the State in straightening or deepening the channel of the Dowagiac river in the county of Van Buren. As well might an act to authorize the construction of a railroad from one point to another include provisions for municipalities along its route to vote aid in its construction, without violating the Constitution.

*Second.* It is contended that this act violates article xiv, § 9, of the Constitution, which provides : " The State shall not be a party to, or interested in, any work of internal improvement, nor engaged in carrying on any such work, except in the expenditure of grants to the State of land or other property." It is not denied that the State had the right to make the improvement by the appropriation of swamp lands for that purpose, and that the contract with West was a competent contract for the State to make. But the vital question is, can the State engage in the work of this improvement and provide means for the payment thereof by direct taxation laid upon the whole or upon any part of the property in the State ? If the Legislature has the authority to pass a law permitting the majority of the legal voters of a particular township to impose a tax to aid the State in the work of an internal improvement, it has the authority to impose such by direct enactment without the intermediate step of a vote of the people and against their wish. And the rule is well settled, if it has not the power to impose such tax directly, it cannot authorize the imposition of the tax indirectly through a vote of the municipality or people. If this act of the Legislature, instead of authorizing and empowering the legal voters of Decatur and Hamilton townships to vote the tax in question, had enacted that $2500 should be assessed and raised by

taxation, and levied upon the taxable property of the township of Decatur, and paid over to the State to be expended under the supervision of the State Board of Control of the State swamp lands to aid in paying for the deepening and straightening of the channel of the Dowagiac river in Van Buren county, it is plain that it would have violated the provision of the Constitution above quoted. If the State Legislature has authority to impose a tax upon the township of Decatur to straighten or deepen the channel of the Dowagiac river, it has the same authority to impose a tax upon Ottawa, Kent and other counties through which the Grand river runs, to straighten or deepen the channel of that river. In short, it would have authority to engage the State in any scheme of internal improvement, and impose taxes to pay the expense thereof. It was to prevent such legislation that the clause above quoted was inserted in the Constitution. The early history of the State need not here be recurred to in order to show why such a clause was inserted in that instrument. Some of the reasons were briefly mentioned in *Bay City v. State Treasurer* 23 Mich. 499. Experience has demonstrated the wisdom of the policy adopted by the people when they framed the Constitution of 1850 and placed it beyond the power of the Legislature to engage the State in works of internal improvements, expect by the expenditure of grants of land or other property. This Court has, on several occasions, been called upon to apply this provision of the Constitution to legislation enacted in contravention of its terms.

In 1857 the Legislature passed an act entitled "An Act to provide for the improvement of navigation over the sand flats of the Muskegon river." Laws 1857, p. 394. This Act appropriated $50,000 from the proceeds of sales of internal improvement lands, which had been donated to the State for the purposes of internal improvements, and the money was to be drawn from the internal improvement fund and no other. The contract was let to John A. Brooks, and was completed by his assignee and accepted by the State, but the Auditor General refused to draw his warrant for the amount, for the reason that the internal improvement fund was exhausted.

The Legislature, in 1867, passed another act, "to provide for the preservation of the Muskegon river improvement, and for other purposes." It authorized the levying and collection of tolls on the commerce of Muskegon river sufficient to pay $50,000, and interest thereon, in five years; and the question presented to this Court was whether this last statute conflicted with the above-mentioned provision of the Constitution, and it was held that it did. It was said in the decision of that case : "If the State, when it entered into the contract with Brooks, had stipulated that the contract price should be paid from tolls levied on commerce, or from any species of taxation, the unconstitutionality of the contract would have been too plain to admit of argument. The case would plainly be one where the State had engaged in a work of public improvement, to be paid for in some other mode than by the expenditure of grants to the State. But certainly the case is not varied in its legal aspects by the fact that the original contract provided for the payment in a constitutional mode, and the unconstitutional substitution is made afterwards. The Constitution does not permit the State either to contract a debt for a public improvement, or to expend in its construction anything but the grants which it has received for the purpose; and any legislation which attempts any other expenditure must be directly within the constitutional inhibition, and therefore void." *Ryerson v. Utley* 16 Mich. 274–75.

This case is decisive of the statute under consideration. The cases are parallel. In this case, the improvement of the Dowagiac river was undertaken by the State, under the law of 1859 and its amendments, and the contract, therefore, so far as appears upon its face, was legitimate and valid. But suppose the contract with West had contained a stipulation that $2500, in addition to the compensation he was to receive from the appropriation of swamp-lands, should be paid to him by a tax levied upon the taxable property of the township of Decatur, under the provisions of Act No. 323,—the illegality of the contract would have been apparent. The contract would have shown, upon its face, that the State had engaged in a work of public improvement, to be paid for in

part in some other mode than the expenditure of grants of land to the State. The Constitution cannot be evaded by making a contract apparently valid, and by special enactment providing for a portion of the expenditure to be raised by taxation and expended in the work under the supervision of State agencies.

In the case of *People v. Township Board of Springwells* 25 Mich. 153, this constitutional provision was again considered, and it was said that "the question whether the work is carried on by the State in no way depends on the sources from which the money is drawn to pay for it. It is a State work, if directed, planned and executed by State agency; and while the fact that the money is charged on a certain locality may make the proceedings objectionable on independent grounds, it does not alter its character."

In the Springwells case, the improvement was to be paid for by special tax on property in a limited district, and no lands or proceeds of lands were to be used in the expenditure. The law was held void because it violated that provision of the Constitution which inhibits the State from engaging in works of internal improvement where the expenditure is not met by grants to the State of land or other property.

The statute under consideration employs State agencies to carry forward the improvement, and so far as the statute forms the basis of any action the means employed to further the improvement are raised, not from the proceeds of lands or other property granted to the State, but by taxation on a particular locality. The statute, for this reason, conflicts with the Constitution in this respect.

*Third.* Another objection to the legality of the tax is based upon the purpose for which it was imposed. The contract was entered into by Mr. West previous to the vote taken by which the tax was authorized. It describes fully the work to be done, and the time and manner of doing it, as well as the compensation which he was to receive. The law and the contract both provided that the contractor should have no claim against the State, except as to the lands appropriated, and Mr. West agreed that he would "make, con-

struct and finish, in a good, substantial and workmanlike manner," the ditch therein described, in consideration of the compensation therein provided to be paid by the State of Michigan. This being so, the $2500 which was to be raised by taxation on the property owners of Decatur was a mere gratuity to Mr. West.

A law passed to authorize such a proceeding is unconstitutional. It deprives the citizen of his property without due process of law; and it makes no difference that it was assented to by a majority of legal voters. A person may give his own property to whom he pleases, but he cannot compel his neighbor to part with his property except by due process of law. *People v. Salem* 20 Mich. 452; *Bay City v. State Treasurer* 23 Mich. 499. I do not think the law can be sustained upon the theory advanced by counsel for defendant, that the taxation was for a local purpose and such purpose meritorious and beneficial to the public. It may be conceded that the straightening and deepening of the channel of the Dowagiac river would be conducive to the public health; that it would be advantageous to the roads leading across the swamp, and very much lessen the expense of keeping such highways in repair. Yet all this does not obviate the constitutional objections to the statute under which this tax was levied, and the remedy for existing evils must be sought in some other direction. The conclusions at which we have arrived with regard to the unconstitutionality of Act No. 323 renders it unnecessary to consider the question as to whether the transaction by which Mr. West was to be paid $2500 in addition to his contract price with the State, was void as being against public policy.

The judgment of the circuit court must be reversed, and a judgment entered here in favor of the plaintiff for $90.04, with costs of all the courts.

The other Justices concurred.