THOMAS L. CHADBOURNE v. COMMISSIONER OF THE STATE
LAND OFFICE.

*State swamp lands--Special appropriation—Limit of reservation of lands
under—Certificate of State Swamp Land Commissioner—
Power of Board of Control.*

Act 19, Session Laws 1879, authorizing the counties of Baraga and
Houghton to construct a State road in the Upper Peninsula, for
which an appropriation of swamp land was made by Act 481, Ses-
sion Laws 1871, provided that on filing with the Commissioner of the
State Land Office a list of the lands selected under said appropria-
tion, the commissioner should reserve the same from sale, provided
such reservation should not exceed three years.  The counties con-
tracted with one Joseph B. Davis for the construction of the road,
and on March 6, 1880, filed the list of land selected, which
exceeded the appropriation by nearly 3,000 acres.  Under the act of
1879, the counties were to apportion the selected lands between the
two, and upon filing a statement of such apportionment with the
State Land Commissioner, and the certificate of the State Swamp
Land Commissioner showing the construction of the road "in as
good and substantial a manner as the State Swamp Land Board of
Control *now* requires," said counties were to receive said lands
according to such apportionment.  Said statement and certificate
were duly filed, the latter on December 30, 1882.  On November 27,
1882, the board of supervisors of Ontonagon county authorized the
clerk of said county to assign its interest in the reserved lands to the
Board of Control of State Swamp Lands, in trust, to be used in pay-
ment for the construction of said road, and on December 12, 1882,
the board of supervisors of Baraga county authorized the Commis-
sioner of the State Land Office to issue patents of the lands appor-
tioned to said county, to said contractor.  The record does not show
such assignment.  After the filing of the Swamp Land Commis-
sioner's certificate, the contractor applied to the Board of Control of
Swamp Lands for its acceptance of the road, which body decided
that said certificate entitled the counties or their assigns to the land
and that the State had nothing to do with their settlement with the
contractors.

On March 13, 1885, the relator applied to the State Swamp Land
Commissioner for patents for 240 acres of said reserved land, upon
certain swamp land road scrip held by him, which application was
refused for the reason that said lands were not subject to entry, hav-
ing been reserved as aforesaid.  These six forty-acre lots were not a

part of the excess of 3,000 acres reserved by said counties taking the list in regular order from the beginning.

*Held,* that the three years' reservation commenced to run from March 6, 1880, when the list of lands was filed with the State Land Commissioner. That the State Swamp Land Commissioner's certificate is not ambiguous, but in strict compliance with the statute, and that the word *now,* in the act, refers to the date of the adoption of the 1879 act, and that having thus complied with the provisions of said act the rights of the counties and their assigns had vested and the land applied for was not subject to entry.

*Held,* further, that the act contemplates that the filing of such certificate shall be a satisfactory showing of the completion of the road, and that it does not require that the road shall be constructed to the satisfaction of the Board of Control of Swamp Lands.

Application for order to show cause why patents should not issue. Argued Oct. 22, 1885. Denied Jan. 20, 1886.

*Cahill, Ostrander & Baird,* for Joseph B. Davis :

There is very little disagreement between the parties as to the facts. The right of relator to enter lands under his scrip is not denied, but the respondent's contention is that the lands in question were not subject to such entry, but belonged to the counties of Baraga and Ontonagon. The lists were filed in the land office March 6, 1880, from which date the three years' reservation would date : *Houghton Co. v. Com. State Land Office,* 23 Mich. 274.

Within the three years a road had been constructed over the line contemplated by the grant, and been accepted by the State Swamp Land Commissioner. If his certificate was in due form not impeached for fraud or mistake, as a matter of law the lands were earned.

If relator claims the benefit of the rule laid down in 23 Mich., before cited, where lands in excess of the grant have been reserved, he has not brought himself within that rule. The lands he asks for are not a part of the excess of 3,000 acres.

*Thomas L. Chadbourne,* for relator:

The lists filed by the counties of Baraga and Ontonagon contained 3,000 acres of land in excess of the appropriation. The 240 acres applied for by relator are not a part of the last 3,000 acres listed.

It is not material whether the reservation ceased three years from the time when the act authorizing the construc-

tion of the road took effect, or from the filing of the list of lands selected by the counties. If the latter date is to be taken, then the three years expired before the acceptance of the road by the State Board of Control, which took place January 29, 1885. Previous to such acceptance it will not be contended that either the counties or the contractor were entitled to patents. After the expiration of the three years, the rule laid down in 23 Mich., above cited, ceases, and under the doctrine of the same case, page 282, the listed lands become a part of the general body of swamp lands, and are subject to entry by any one.

CHAMPLIN, J. Application was made to this Court, June 8, 1885, for an order upon the Commissioner of the State Land Office to show cause why he should not convey to relator six 40's of State swamp land, in Ontonagon county. Relator applied to the commissioner for patents for this land on March 13, 1885, and was refused because the lands applied for were not subject to entry, having been, on the sixth day of March, 1880, withdrawn from sale, under the provision of act No. 19 of the Session Laws of 1879, for the benefit of Baraga and Ontonagon counties; they having, on the third day of October, 1879, filed an agreement in the State Land Office to construct a road in accordance with the provisions of said act. On the seventeenth day of April, 1871, the Legislature passed act No. 481, entitled "An act to provide for laying out and establishing a State road in the counties of Ontonagon and Houghton." The third section reads as follows:

"To secure the construction of said road there is hereby appropriated three sections of State swamp lands per mile of said State road; said lands to be selected from any of the State swamp lands in the Upper Peninsula not otherwise reserved or appropriated."

Nothing was done under this act, which contained only four sections; and in 1879 the Legislature, on the twenty-ninth day of March, by act No. 19, amended and re-enacted at length sections 1, 2, and 4 of the act of 1871. Section 1 appointed Richard Chynoweth, Louis M. Dickens, and John Q. McKernan commissioners to lay out, establish and super-

intend the construction of a State road, commencing at the Bohemian mine, in the county of Ontonagon, and running thence to the village of Baraga, to be known as the "Baraga and Ontonagon State Road." The road provided for in the section, before it was amended, was to be known as the "Houghton and L'Anse State Road." Section 2 of the act, as amended, authorized the counties of Baraga and Ontonagon to undertake the construction of such work jointly, each bearing such proportion of the entire cost as might be agreed upon by their respective board of supervisors, or said board might apportion the work between the said counties, each county constructing such portion of the road as might be assigned to it; but the work should not be commenced by either county until a formal agreement was made between said boards, which agreement should also apportion between the counties the lands appropriated under the act, and as soon as said counties should file a list of lands selected under the provisions of the act, it was made the duty of the Commissioner of the State Land Office to reserve such lands from sale, provided said reservation should not be for a longer period than three years; and provided, further, that if said counties failed to agree upon the construction of said road before May 1, 1880, it should be competent for the Board of Control of State Swamp Lands to provide for its construction in the usual way. Section 4 of the act as amended reads as follows:

"Upon filing with the Commissioner of the State Land Office a statement of the apportionment certified by the respective clerks of Baraga and Ontonagon counties and upon satisfactory showing to the Board of Control of State Swamp Lands by a certificate from the State Swamp Land Commissioner, or other authorized agent of said board, that said road has been constructed in as good and substantial a manner as the board now require in the construction of State roads, the said counties, or their assigns, shall receive said lands in the proportion to which they may be entitled to them by the terms of said apportionment."

The counties undertook the construction of the road within the time provided, and filed the list of lands on the

sixth day of March, 1880. The entire length of the road was thirty miles, and the quantity of land which the act authorized the counties to select was 53,760 acres. The list filed actually embraced 56,759.84 acres, being an excess of the quantity authorized of 2,999.84 acres. A contract was made between the local commissioners named in the act of 1879, acting for the counties, and Joseph B. Davis, by the terms of which he was to construct the road for the lands appropriated and some other minor considerations, and to have the road completed by October 1, 1880. It was not completed at the time stated, and by mutual consent the time was extended, from time to time, until December 1, 1882, and before the expiration of this time the contractor claims to have completed the construction of the road. He procured, and filed with the Commissioner of the State Land Office, the affidavits of Richard Chynoweth and John Q. McKernan, two of the commissioners named in the act under whose superintendence the road was to be constructed, as follows:

" *State of Michigan, Ontonagon County—ss.*
" *State of Michigan, Baraga County—ss.*

" John Q. McKernan and Richard Chynoweth, being duly sworn, depose and say that they are the local commissioners on the Baraga and Ontonagon swamp-land State road; and that they have personally examined the job let to Joseph B. Davis as per contract No. 1 on the said Baraga and Ontonagon road, and that they have found the distance thirty miles, more or less—a correct survey of the same to be made, commencing at the Bohemian mine in Ontonagon county, running thence in an easterly direction to the village of Baraga and county of Baraga and State of Michigan—of said job fully completed in a good and workman-like manner; that the materials used and all parts of the work are in accordance with the specifications of said contract; and that they have accepted the same subject to the approval of the State Swamp Land Commissioner and Board of Control.

" JOHN Q. McKERNAN,
" RICHARD CHYNOWETH,
" *Local Commissioners.*

" Sworn to and subscribed before me this twenty-third day of October, 1882.

WM. H. HENDRICH, *Justice of the Peace.*

"Sworn to and subscribed before me this twenty-third day of October, 1882.

David F. Spence, *Justice of the Peace.*"

The affidavit was indorsed:

"Acceptance. Contractor. Accepted October 23, 1882. Approved October 23, 1882.         Fred. J. Meech,
"*State Swamp Land Commissioner.*"

He also filed, on the thirtieth day of December, 1882, with the Commissioner of the State Land Office the certificate of State Swamp Land Commissioner as follows:

"State Road Department.

"Lansing, December 9, 1882.
"I hereby certify that the Baraga and Ontonagon State road has been examined by me, and that the same has been constructed in as good and substantial a manner as was required by the Board of Control in the construction of State roads at the time of the passage of the act creating said road.         "Fred J. Meech,
"*State Swamp Land Commissioner.*"

Indorsed: "Received at the State Land Office, December, 30, 1882."

It further appears that after the contractor had claimed to have finished his job of constructing said road, and prior to the affidavit and certificate above set forth, and before the examination by such officers, the road was examined and inspected by the several boards of supervisors of the counties of Baraga and Ontonagon, or by committees appointed by and acting for said boards, respectively, who expressed themselves as pleased with the general character of the work, but suggested a few slight additions or changes, and said that, if the contractor would do the work so suggested, they would recommend the acceptance of the work, which he did, and reported the same to said boards, and asked the passage of resolutions authorizing the patents for said lands to be issued to him by due and proper assignments of their interests to him. Pursuant to such request, on the twelfth day of December, 1882, the board of supervisors of Baraga county, lawfully convened, passed two resolutions, of which the following are copies:

"Resolved, that the Commissioner of the State Land Office be, and hereby is, authorized and directed to issue patents for the lands reserved to the county of Baraga for the purpose of building the State road from Baraga, in the county of Baraga, to the Bohemian mine, in the county of Ontonagon, to Joseph B. Davis, or his order, when the work is completed and approved in accordance with his contract with the State. Resolved, further, that the clerk of this board be, and he is hereby, instructed to forward a certified copy of this resolution to the Commissioner of the State Land Office at Lansing."

And on the twenty-seventh day of November, 1882, the board of supervisors of Ontonagon county, lawfully convened, passed the preamble and resolution of which the following is a copy."

"Whereas, the county of Ontonagon, in accordance with the provisions of act No. 19, March 29, 1879, of the Legislature of the State of Michigan, filed a list of certain swamp lands in the office of the Secretary of State, to be reserved by the State to pay for the building of the Baraga and Ontonagon State road; and, whereas, Joseph B. Davis took the contract of building said road; therefore, be it resolved, that the county clerk be, and he is hereby authorized to make an assignment of the interest of the county in and to the lands mentioned in the said list to the Board of Control of State Swamp Lands of the State of Michigan in trust, to be used in payment for the construction of said Baraga and Ontonagon road, to whomsoever shall be entitled to the same."

There is no evidence in the record before us that the clerk ever executed the assignment contemplated by the resolution, and the fact is unimportant. The contractor, after the approval and acceptance of the road by the local commissioners, as above specified, and the filing of the certificate of the State Swamp Land Commissioner, applied to the Board of Control of State Swamp Lands, and requested them also to accept the road, and furnish a certificate thereof, and thereupon said board took the following action thereon :

"The matter of the acceptance of the Baraga and Ontonagon State road was then taken up. After a full discussion, the question of the board's jurisdiction under the act creat-

ing the road was referred to Messrs. Pritchard and Jenney, who shortly reported that the contract having been entered into before May 1, 1880, the board had no authority in the premises; that the certificate of the State Swamp Land Commissioner, as contemplated by the act, would entitle the counties of Baraga and Ontonagon, or their assigns, to the land, and neither the State nor any of the State authorities had anything to do with their settlement with the contractor. Which was adopted as the sense of the board."

The fact that the counties were entitled to patents for the lands, by the filing of the certificate of the State Swamp Land Commissioner on the thirtieth of December, 1882, was notified to the county clerks of the respective counties on April 14, 1883, by the Deputy Commissioner of the State Land Office, and also by the Attorney General, by letter under date of August 25, 1883.

It is not necessary, in the view I take of the law under the facts of this case, in order to determine the question at issue, to pursue the subject of the subsequent action of the Board of Control further. As before stated, the relator applied to the Commissioner of the State Land Office for a patent for 240 acres of these lands, on the thirteenth of March, 1885, under certain scrip originally earned by Houghton county for building the Mineral Range State road, under the provisions of act No. 239 of the Public Acts of 1863. The lands which relator demands patents for are not among those contained in the excess of the quantity authorized, taking the list in successive order from the head, but are contained in the first 53,760 acres embraced in the list. The relator states his position as follows: (a) Irrespective of the question of the expiration of the reservation, there being an excess in the list, relator has a right to patent swamp lands up to the amount of the excess in the list. (b) But if this were not so, *after the reservation had expired,* the contractor ceases to have the right to consider the excess to be at the foot of the list, and indeed ceases to have any right, except the right to patent, from the general body of swamp lands open to him, the number of acres he was

entitled to after completing his contract and having it accepted.

The first point of importance is when the reservation expired, and upon this I do not think there is any difficulty. The act itself fixes the period. It reads:

"And as soon as said counties shall file a list of lands selected under the provisions of this act, it shall be the duty of the Commissioner of the State Land Office to reserve said lands from sale, provided said reservation shall not be for a longer period than three years."

The lists were filed on the sixth day of March, 1880, and consequently the reservation extended to the sixth day of March, 1883.

The next question is whether, within the period of reservation, the fourth section of the act had been complied with so as to entitle the counties of Baraga and Ontonagon to receive the lands. If the section was complied with, then the rights of the counties, and their assigns, had become vested, and the lands they were entitled to receive were not subject to relator's entry. That portion of the section which relates to the filing with the Commissioner of the State Land Office a statement of the apportionment made by the counties of the land thereto appropriated, certified by their respective clerks, was complied with, and no question is made upon that branch of the case. Nor is it controverted that on the thirtieth day of December, 1882, the certificate of the State Swamp Land Commissioner above set forth was filed with the Commissioner of the State Land Office. The certificate is in exact compliance with the statute. The sentence at the close of the certificate, in these words, "at the time of the passage of the act creating said road," is the equivalent for the word "now" in the act. The certificate is not ambiguous, and cannot possibly refer to the time of the passage of the original act in 1871. That act provided that the road to be constructed should be known as the "Houghton and L'Anse State Road;" while the act creating this road provided that it should be known as the "Baraga and Ontonagon State Road," and it is to this road, created by the act of 1879, that the certificate by express terms refers.

It is contended, however, that the counties are not entitled to receive the lands on the filing the certificates of the State Swamp Land Commissioner certifying that said road has been constructed in as good and substantial a manner as the board required in the construction of State roads at the time the act was passed creating said road, but that the road must, in addition, be accepted and approved by the Board of Control of the State Swamp Lands. I find no warrant for such contention in the act. The language is:

"Upon satisfactory showing to the Board of Control of the State Swamp Lands, *by a certificate from the State Swamp Land Commissioner, that said road has been constructed,*" etc.

The statute contemplates that the filing of such certificate by the specified State officer is a satisfactory showing. It does not require that the road shall be constructed to the satisfaction of the board of control. It requires no action of the board; but it prescribes what the satisfactory showing shall be, namely, the certificate of the State Swamp Land Commissioner; and says that when that is filed with the Commissioner of the State Land Office the said counties, or their assigns, shall receive their land. To hold that the board of control should also approve and accept the road would be to add a condition to the law which the Legislature has not seen fit to impose. The law provides that the title to the lands shall vest in the counties, or their assigns, upon satisfactory showing to the board of control, but it also provides what that showing shall be; and when that showing is made in the manner provided by law, that showing is sufficient, and the title vests without any action of the board.

I am of opinion that the equitable title to these lands vested in the counties of Baraga and Ontonagon, or their assigns, on the filing of the certificate of the State Swamp Land Commissioner with the Commissioner of the State Land Office on the thirtieth of December, 1882, which was before the time limited in the reservation had expired, and that the lands so vested to the amount which could legally

be selected in the order such lands were listed upon the lists filed under the act; and the lands so embraced, to the amount authorized, are not subject to private entry. It follows that the application should be denied, with costs.

The other Justices concurred.