JOSEPH B. DAVIS v. THE BOARD OF SUPERVISORS OF ONTONAGON COUNTY.

*Grant of land for construction of State road—Additional appropriation by board of supervisors.*

Act No. 19, Session Laws of 1879, authorized the counties of Baraga and Ontonagon to construct a State road in the Upper Peninsula, for which an appropriation of swamp lands had been made, and, by their boards of supervisors, to apportion its cost between them, as also the said lands. A proposed contractor being unwilling to build the road for the appropriation, the board of supervisors of Ontonagon county passed a resolution agreeing that the county should pay the contractor on said road a specified sum per mile in *cash* as a bonus on its completion.

*Held*, that such action was illegal and void, the road being a State enterprise, and the bonus voted being a mere gift to the contractor, and the board having no power to make such gift; nor could the people of the county have done so, had the matter been submitted to them and voted at the ballot-box.

Mandamus to compel the county of Ontonagon to pay a bonus for building a State road, and for other relief. Submitted November 16, 1886. Denied January 20, 1887. The facts are stated in the opinion, and in *Chadbourne v. State Land Commissioner*, 59 Mich. 113.

*Cahill & Ostrander*, for relator.

*Olds & Robson*, for respondent.

Morse, J. In 1871 the Legislature of this State passed an act[1] appropriating three sections of State swamp lands per mile to build a State road in the counties of Ontonagon and Houghton. The appropriation was not used or earned, and in 1879 the Legislature amended the act, and by such amendment empowered the counties of Baraga and Ontonagon to build jointly a road commencing at the Bohemian mine, in Ontonagon, and running to the village of Baraga.[2]

The amended act provided that these counties should, by their boards of supervisors, agree what proportion of the entire cost of the road should be borne by each, and apportion between themselves the lands appropriated, to be by them selected and reserved from market. Commissioners were appointed by the act to lay out, establish, and superintend the construction of the road. These commissioners laid out a route, and in July, 1879, advertised for bids.

The relator, Joseph B. Davis, inspected the line of the proposed road, and made some examination of the lands to ascertain their value, with the view of bidding for the job of building the road. After such examination, he was unwill-

[1] Act No. 481, Laws of 1871.
[2] Act No. 19, Laws of 1879.

ing to undertake the construction of the road, in the manner required by the act, for the appropriation, and so informed the boards of supervisors of the two counties. Thereupon the board of supervisors of Ontonagon county, on the eleventh of August, 1879, passed the following resolution:

"*Resolved*, that the county of Ontonagon agrees to pay contractor on the Baraga and Ontonagon State road a cash bonus of $50 per mile, or a bonus of $50 per mile in swamp-land scrip now owned by the county, at 60 cents per acre, said bonus to be paid on the completion of the road; and provided, further, that the bridges on said road be built according to the plans and specifications furnished by the commissioners of said road, or the State Board of Control, and that the road be cleared out on or before December 1, 1879, so as to make as good a winter road as there has been heretofore. These resolutions are offered with the understanding that. Baraga county agrees to do the same, or its equivalent."

Afterwards the county of Baraga, by resolutions of its board of supervisors, agreed to pay Davis, who had taken the contract, a sum equal to $50 per mile for each mile of the road built by him, and, after the completion of the road, paid the same to him, except $20, which he avers they are ready and willing to pay at any time.

Relying, as he claims, upon the offers of said counties, Davis put in a bid to build said State road, and, being the lowest bidder, his bid was accepted. He thereupon entered into a contract, September 13, 1879, with Richard Chynoweth, Lewis M. Dickens, and John Q. McKernan, styled in said contract as "local commissioners upon the Baraga and Ontonagon swamp-land State road, acting as such commissioners in behalf of the State of Michigan," for the construction of said road for the three sections of land per mile, according to the act.

The contract minutely specified the details of the work, and provided that it should be done to the satisfaction and acceptance of said local commissioners, and of the State Swamp Land Commissioner, and be approved by the Board

of Control of State Swamp Lands; and upon such accept-
ance, and the certificate of said State Swamp Land Commis-
sioner that said work had been done in accordance with the
terms of said contract, and the approval of such certificate
by a majority of the Board of Control, said Davis was to re-
ceive by the terms of said contract, "as a compensation in
full for said work and materials furnished, the sum of $2,400
per mile, payable in State swamp lands," which were to be
selected by said Davis from any unsold State swamp lands in
market in the Upper Peninsula, "and applicable to the con-
struction of said road." The road was to be fully completed
by the first day of October, 1880.

No mention was made in said contract of the bonus voted
by the supervisors of Ontonagon and Baraga, and no refer-
ence appears therein to either county as in any way or manner
being concerned in the contract, or the building of the road
under it.

Davis had his contract extended from time to time until the
first day of December, 1882, at which time he claims to have
completed it. The acceptance and certificate required by the
contract were filed at the State land office, December 30,
1882. This extension of the time of the completion of the
road was obtained from and authorized by the State Board of.
Control.

It appears that the counties of Baraga and Ontonagon
selected the lands to be appropriated under the amended act.
of 1879, and filed lists thereof in the office of the Commis-
sioner of the State Land Office. In the case of *Chadbourne
v. State Land Commissioner*, 59 Mich. 113,[1] we decided that
the conditions of the act had been substantially complied
with, and that the title to so much of the lands, so selected
and listed, as were necessary to fill out the appropriation,
had become vested in these counties. Since that decision,

---

[1] In the second line of the head-note, the word *Ontonagon* should
be substituted for *Houghton.*

the board of supervisors of Ontonagon county have directed the Commissioner of the State Land Office to issue patents for said lands to Davis.

On the thirteenth of March, 1880, the board of supervisors of Ontonagon county, by resolution, authorized their chairman and clerk to enter 480 acres of swamp land in the name of that county, to be held in trust for said Joseph B. Davis; and, in pursuance of such resolution, there was located 406.25 acres of such land in said office of the Commissioner of the State Land Office, which said lands are still reserved upon the books of said office to Ontonagon county, and have never been patented. The relator claims that in equity these lands belong to him by virtue of said resolution of August 11, 1879.

September 25, 1885, he applied to the board of supervisors of said county for an assignment of said lands, which had been reserved for his benefit, and also for the payment of $1,176.65, which was the amount due to him, as he claimed, under such resolution. The board refused to act thereon, and tabled his application.

June 14, 1886, through his attorneys, Cahill & Ostrander, of Lansing, he again made a formal application in writing to the same effect and for the same purpose. The board declined to act in regard to his claim, except as shown in their records, as follows:

" The prosecuting attorney makes verbal report in regard to letter of Messrs. Cahill & Ostrander, in reference to Baraga road matter, and on motion the said letter was laid upon the table, in accordance with the resolution of this board dated September 25, A. D. 1885; and on further motion it was resolved that the claim of Joseph B. Davis, this day presented to the board, be laid upon the table, in accordance with the said resolution of September 25, 1885."

The road so built by the relator, as hereinbefore mentioned, was 28.41 miles in length, for which number of miles he has received from the State patents for lands at the rate of

three sections per mile for said distance. Six miles, 12 chains, and 67 links of said road is within Ontonagon county, the balance of the same being in Baraga and Houghton counties.

The relator comes to this Court praying for a peremptory *mandamus* to compel the board of supervisors of Ontonagon county to assign to him the certificates of the lands reserved by them under their resolution of March 13, 1880, and also to compel them to order a warrant upon the treasurer of said county for $1,176.65, to be drawn payable to the relator, and to be delivered to him or his counsel.

Respondents do not deny the passage of the resolution of August 11, 1879, or the reserving of the lands under the resolution of March 13, 1880, but they answer that the board of supervisors had no authority or power to vote this bonus to Davis. They deny that the county of Ontonagon had anything to do with the contract for the work, or any power or authority over the same. They aver that the contract was made with the local commissioners on the behalf and in the name of the State of Michigan, and that all the counties had to do with the construction of the road was to select and reserve the lands, and when the State was satisfied with the work, and accepted the same, to direct the commissioner to issue the patents for the same to the contractor, which has been done. They also deny that Davis relied upon this bonus when he entered into his agreement, and aver that the three sections of land per mile that he has received have amply paid him for his services and labor and material furnished. They further answer that the county has no fund out of which to pay the money demanded, and the board of supervisors no power to create any such fund; and that, under any view of the case, Davis is not entitled to this bonus, because he has failed to comply with the terms of the resolution of August 11, 1879, in several respects, specifying them.

There is no doubt but this road was a State road, and con-

structed and accepted and paid for by the State. The only thing the counties named in the act had to do with the matter was to act as trustees for the contractor, by selecting and listing the lands, and reserving them from market for his benefit, and, when the proper certificate under the act was filed with the Commissioner of the State Land Office, directing the issue of the patents to him in payment of the work. Whatever may have been contemplated by the act, the fact is that the contract was let, and the work done was supervised and accepted, by the State, through its agents and officers. The counties had no power to resist or hinder the acceptance of the work. This was exclusively placed in the hands of the State Swamp Land Commissioner by the terms of the act; and in fact the acceptance of the road as built, and the patenting of the lands to Davis, were against the protest of the supervisors of Ontonagon county, and they neglected or refused to direct the issue of the patents until after the filing of the opinion of this Court in *Chadbourne v. State Land Commissioner*, 59 Mich. 113.

In our opinion, the action of the board of supervisors in voting this additional $50 per mile to the contractor was illegal and void. There is no power vested in that body to make a gift of money on hand, or swamp-land scrip owned by the county, to the contractor or builder of this State road. There was no authority given by the act for any such donation, even if the Legislature had power to confer any such authority. It was not contemplated that any more compensation should be awarded the contractor than the appropriation contained in the act; and the contract under which Davis performed the work expressly provided that such appropriation should be payment in full to him under the contract. It is not claimed that he did any other or further work than the contract required he should do in order to perform it and complete the road.

There can be found no warrant anywhere, or under any

view of the case, to support the validity of the resolution of August 11, 1879, or to give the relator any rights under it. If this road was a State enterprise, and to be built by the State appropriation named in the act, then the voting of the bonus was a mere gift to the contractor. It needs no argument or citation of authorities to show that the board of supervisors cannot give away the money or property of the people of the county in this manner. Nor could the people have made such a gift had the matter been submitted to them and voted at the ballot-box. *People v. Salem*, 20 Mich. 452; *Bay City v. State Treasurer*, 23 Id. 499; *Anderson v. Hill*, 54 Id. 491.

There is no doubt as to its being a State work. With only a little over six miles of the road in Ontonagon county, this voting of $50 per mile for the whole 28 miles, over three-quarters of its length being in other counties, could not be considered as an appropriation for highways and bridges in Ontonagon county, even if such an expenditure were lawful for such purpose.

The bonus was manifestly intended as an extra compensation to the contractor for constructing this State road, over and above what he was to receive from the State, and which his contract stated should be received as payment in full for his work. It was therefore a mere gratuity to Davis, and its collection cannot be enforced. *Anderson v. Hill*, 54 Mich. 490, 491.

The writ must therefore be denied, with costs against the relator.

The other Justices concurred.