## HILTON v. DUMPHEY.

1. TAXES—SALE OF LANDS—COLLATERAL ATTACK.

A tax sale to the State is not subject to collateral attack on the ground that the land was not offered for sale a second time before being bid in to the State, as required by section 62 of the tax law of 1889 (3 How. Stat. § 1170g1), where the owner of the land, although appearing in the proceeding in which the decree of sale was made, took no steps to set aside the sale within the time prescribed by section 66 for filing objections to confirmation.

2. SAME—DRAIN TAXES—HOW ENFORCED.

Under section 6, chap. 6, of the drain law of 1885 (3 How. Stat. § 1740f6), providing that taxes assessed under such act shall be collected in the same manner as State and other general taxes, lands delinquent for drain taxes may be bid off in the name of the State, in a proper case, in accordance with the provisions of the general tax law, notwithstanding lands so bid to it are, by the terms of such law, held "for the use of the State, county, and town, in proportion to the amount due each," neither of which bodies has any pecuniary interest in drain taxes.

Error to Monroe; Kinne, J.   Submitted April 13, 1897. Decided May 28, 1897.

Ejectment by Joseph S. Hilton against Azuba Dumphey. From a judgment for defendant, plaintiff brings error. Reversed.

*Randall & Corbin*, for appellant.

*Landon & Lockwood* (*I. R. Grosvenor*, of counsel), for appellee.

LONG, C. J.   Action of ejectment.   Case tried before the court without a jury, who made findings of fact and law, and entered judgment in favor of defendant.   De-

fendant is in possession of the property. Plaintiff claims title under tax deed.

It appears that in 1889 a petition was presented to the township drain commissioner to widen and deepen what is called "Jones' Drain." Such proceedings were had that a tax amounting to $40.02 was assessed upon defendant's land for the construction of the drain. All the other taxes of this year were paid, and the land was returned delinquent for this drain tax. On April 15, 1892, a petition, filed in the circuit court of Monroe county, in chancery, for a decree for the sale of lands returned delinquent for taxes, came on to be heard, and a decree was entered, adjudging, among other things, that this land be sold to pay said tax. On the 2d day of May, 1892, the premises were bid off to the State for the sum of $56.92, and on the 15th of May, 1893, the county treasurer, pursuant to notice that a sale would be made of all lands previously bid in by the State, struck off and sold them and the bid of the State to Cyrus W. Pettit, who afterwards conveyed to the plaintiff.

It is defendant's contention:

1. That there is no authority in the tax law empowering the county treasurer to bid to the State lands for a drain tax.

2. That, even if the State could bid in the land, there is no evidence of a lawful sale.

The sale was made under Act No. 195, Pub. Acts 1889. Section 62 of that act provides:

"If any parcel of land cannot be sold for taxes, interest, and charges, such parcel shall be passed over for the time being, and shall on the succeeding day, or before the close of the sale, be reoffered; and if on such second offer, or during such sale, the same cannot be sold for the amount aforesaid, the county treasurer shall bid off the same in the name of the State, for the use of the State, county, and town, in proportion to the taxes, interest, and charges due each." 3 How. Stat. § 1170*g*1.

The report of the county treasurer, as found by the court below, shows that he "did keep such sale open

until each and every parcel of land mentioned in said tax record and described therein had been publicly offered for sale, and that the parcels of land described in said record opposite to which appears the word 'State' did not receive any bids," and that, in pursuance of the statute, he "did bid them off in the name and in behalf of the State of Michigan, for the sums set opposite to each respective parcel so marked." It is contended by the defendant that there is no showing by the report of the county treasurer that he offered this parcel of land for sale, and for want of bidders passed it over to the succeeding day, or before the close of the sale reoffered it for sale; and that, therefore, there was no such compliance with the provisions of the statute as to make the sale a valid one.

The report does not affirmatively show that there was any second offering, as directed by the statute; but section 66 of the act provides that the report of sale shall be filed with the clerk of the court, etc., and "all sales shall stand confirmed, subject to the right of redemption provided for in section 64, unless objections thereto are filed within eight days after the time limited for filing such report, without the entry of any order of further notice." This statute, therefore, makes it unnecessary to enter any order of confirmation. The sale stands confirmed upon filing the report, unless objections are filed within eight days, etc. The tax record, we think, fairly discloses that defendant appeared in the proceedings on which the decree was taken, as it is stated that her objections were overruled. Can she now, without having moved to set aside the sale within the eight days provided by the statute, and in a collateral proceeding, take advantage of the irregularity in making the sale? The defect is not jurisdictional. If it were, it would be subject to very different considerations. If defendant had applied to the court in that proceeding seasonably, there can be no doubt but that the sale would have been set aside. This she did not do. She cannot raise the question in this collateral

proceeding. *Ruggles* v. *First Nat. Bank*, 43 Mich. 196; Van Fleet, Coll. Attack, §§ 787, 788.

Under the first point made by counsel, it is contended that, inasmuch as by the provisions of section 62 of the general tax law the county treasurer "shall bid off the same in the name of the State, for the use of the State, county, and town, in proportion to the taxes, interest, and charges due each," it is apparent that this statute has no application to the sale of lands for drain taxes, as neither the State, county, nor town has any interest in the moneys arising from such sales; that such taxes are purely neighborhood affairs, under *Dawson* v. *Township of Aurelius*, 49 Mich. 479; *Camp* v. *Township of Algansee*, 50 Mich. 4; *Anderson* v. *Hill*, 54 Mich. 485; *Alcona Co.* v. *White*, Id. 505. It is true that these drain matters are not regarded as matters in which the State, county, or township has a pecuniary interest; but the drain law provides that such taxes are to be collected "in the same manner as State and other general taxes are collected," etc. This act was passed in 1885, and, so far as any provision of the drain law is concerned, has not been changed. There is no provision for the sale of lands for the nonpayment of drain taxes other than that found in the general tax laws. It must be presumed that the legislature intended that some method should be provided for selling lands assessed for drain taxes. Such tax is made a perpetual lien upon the lands assessed, and we think the general tax laws were intended to cover sales of this kind. While the State has no pecuniary interest in the matter, yet the legislature, by the act, made the county treasurer the agent of the State for the purpose of making sales of lands for delinquent taxes, and, as such agent, he is, we think, clothed with authority to sell lands for drain taxes, and therefore that the bid to the State in this case was authorized by the general tax law. The land was struck off to the State, and the next year reoffered, and sold to Mr. Pettit.

The court was in error in concluding that the judgment

should be in favor of defendant.    Under the facts found, the judgment should have been for the plaintiff.    Such judgment will be entered here, with costs of both courts in favor of plaintiff.

The other Justices concurred.