DUMPHEY *v.* AUDITOR GENERAL.

1. TAXATION—DESCRIPTION OF LANDS—SUFFICIENCY.

A description of land in a tax roll as a given subdivision of section 8, T. 6, R. 6, is sufficient, where the roll is entitled in the name of the township, although there are four townships in the State so numbered.

2. SAME—SALE TO STATE—REPORT OF SALE—SUFFICIENCY.

A tax sale under the law of 1889 will not be set aside, even in a direct proceeding, on the ground that the treasurer's report of sale failed to show that the land was offered a second time before being bid off to the State, where it appears that the land was in fact so reoffered.

*Mandamus* by Edith Dumphey, as guardian of Azuba Dumphey, against Roscoe D. Dix, auditor general, and Joseph S. Hilton, to compel the former to cancel a tax deed. Submitted January 23, 1900. Writ denied March 13, 1900.

*Willis Baldwin,* for relator.

*Horace M. Oren,* Attorney General, for respondent auditor general.

*Randall & Corbin,* for respondent Hilton.

HOOKER, J. Azuba Dumphey owned, and with her husband occupied, the premises in controversy in 1889, when the taxes, including a drain tax, were levied upon it. At the April term, 1892, of the circuit court for the county in which the lands are situate, the petition of the auditor general for a decree against delinquent tax lands was heard; Azuba Dumphey having been personally served with process, and, through a solicitor, having filed objections to the validity of the drain tax. Testimony was taken in open court, and the validity of the drain tax was sustained. In May, 1892, at an offering by the

county treasurer under the law of 1889 (Act No. 195, Pub. Acts 1889), the land was bid in to the State. In May, 1893, it was reoffered, and sold to Cyrus W. Pettit, he receiving a deed from the county treasurer. This was under the provisions of section 111 of the law of 1891 (Act No. 200, Pub. Acts 1891). Pettit conveyed to Hilton in 1894, and on July 14, 1894, Hilton began eject-ment proceedings. A verdict was rendered for the de-fendant, but the case was reversed, and a judgment rendered for the plaintiff, upon a review of the case by this court. *Hilton* v. *Dumphey*, 113 Mich. 241 (71 N. W. 527). Subsequently, in a proceeding to which these respondents were strangers, the probate court appointed Edith Dumphey guardian of Azuba Dumphey, and she thereupon filed a petition in chancery, making respondents parties, and asking, upon account of alleged insanity and incompetency of Azuba Dumphey, that the sale be set aside, and she be permitted to pay the taxes. The circuit court and this court sustained the demurrer interposed by the defendants. *Dumphey* v. *Hilton*, 121 Mich. 315 (80 N. W. 1). The proceeding now before us rests upon a peti-tion filed by the guardian, asking a peremptory *mandamus* to compel the auditor general to cancel the deed made by the county treasurer to Pettit. Three grounds are relied upon: *First*, that the tax roll did not sufficiently describe the land; *second*, that the drain tax did not properly appear upon the roll; and, *third*, that the sale of the land for the delinquent tax of 1889 was not in accordance with section 62 of the tax law of 1889 (Act No. 195, Pub. Acts 1889).

The alleged defect in the description is that the land is described as a given subdivision of section 8, T. 6, R. 6. The fault found with it is that there are four townships in the State numbered 6 and range 6. The roll was for the township of Dundee, which contains but one township 6, range 6. We are of the opinion that the description was sufficient, under the holding in *Auditor General* v. *Spar-row*, 116 Mich. 585 (74 N. W. 881).

This land was assessed in 1889. It was offered for sale under a valid decree in May, 1892. The law of 1889 had meantime been supplanted by a new tax law passed in 1891, but section 111 of that act (Act No. 200, Pub. Acts 1891) provided that lands previously returned delinquent should be sold under the act of 1889. Accordingly this property was offered, and was reported to the auditor general as bid in to the State for want of other bidders. It is claimed that the report of sale did not show that the land was offered a second time before being bid off to the State, and therefore the sale should be set aside and the deed canceled. Upon the first hearing of this controversy, it was said that, had the petitioner applied seasonably, the court would have set aside the sale, but that, not being a jurisdictional defect, the sale could not be attacked collaterally. The petitioner has now attacked it directly, and maintains that the auditor general should cancel the deed for this defect. Section 111, Act No. 200, Pub. Acts 1891.

· This report of sale is much more comprehensive than the one passed upon in the case of *Jenison* v. *Conklin*, 114 Mich. 9 (71 N. W. 1114), which was said to be a sufficient compliance with the statute. It is contended that we have held to the contrary in our former opinion, where it was said, "If defendant had applied to the court in that proceeding *seasonably*, there can be no doubt but that the sale would have been set aside." We construe this to mean that the court would, upon such an application, accompanied by proof that the land was not properly sold, have set aside the sale, and not that this would have been done without such proof. It was distinctly said that the omission to reoffer, not the want of particularity in the report, was an irregularity merely *in making the sale*. The case shows, also, that the defendant had appeared in the proceeding, and should have applied seasonably, apparently meaning within the eight days prescribed by statute. This record contains affidavits which show that the sale was properly made, though the report failed to

show that the land was reoffered. Under these circumstances, the auditor general properly refused to cancel the deed. These views, in connection with the case of *Dumphey* v. *Hilton*, 121 Mich. 315 (80 N. W. 1), cover the questions raised.

The writ is denied.

The other Justices concurred.