(43 App. Div. 444.)

PEOPLE ex rel. SWEENEY v. YORK et al.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. MUNICIPAL CORPORATIONS—MEMBERS OF POLICE FORCE—STATUTES.
 Under the charter of Brooklyn (Laws 1888, c. 583, tit. 11, § 4, as amended by Laws 1889, c. 158), specifying the employés composing the police force, and not mentioning the chief engineer of the police patrol boat, such engineer is not a member of the force.

2. SAME.
 Laws 1893, c. 109, authorizing the commissioner of police to employ such crew as he might deem necessary for the police patrol boat, does not make such crew members of the Brooklyn police force, merely by virtue of their employment.

3. SAME.
 Greater New York Charter, §§ 273, 282, retaining in the service of Greater New York the employés of the commissioner of police of Brooklyn that were serving at the time this portion of the charter became operative, does not include an employé who was dismissed before these provisions went into effect.

4. SAME—REMOVAL FROM SERVICE.
 The charter of the city of Brooklyn (Laws 1888, c. 583, tit. 3, § 2), providing that no person "employed on the police" force could be dismissed without being found guilty of misconduct or incompetence by public trial, does not include mere employés in the police department.

5. SAME—ABOLITION OF OFFICE.
 The charter of the city of Brooklyn (Laws 1888, c. 583, tit. 3, § 2), providing that no person "employed on the police" force could be dismissed without cause shown, and after hearing, does not prohibit the abolition of the positions which they occupy, where it is done in good faith, and upon grounds of public policy.

6. PLEADING—MANDAMUS—ISSUES AND PROOF.
 Where an alternative writ of mandamus for the reinstatement of the relator in public service alleges that the position occupied by relator was not abolished in good faith and for sufficient reasons, and has not in fact been abolished, and the answer of respondents contradict these allegations, and relator offers no evidence to prove them, the writ is properly dismissed.

Appeal from special term, Kings county.

Alternative writ of mandamus on the relation of Alfred L. Sweeney against Bernard J. York and others to compel the reinstatement of relator as chief engineer of police patrol boat. From an order of the supreme court dismissing the writ, and from an order denying the relator's motion for new trial, he appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James A. Wilson, for appellant.

William J. Carr (Jerome W. Coombs, on the brief), for respondents.

WILLARD BARTLETT, J. On the 18th day of June, 1892, Henry I. Hayden, who was then the commissioner of police and excise of the city of Brooklyn, made and signed a certificate in these words:

"This is to certify that the commissioner of police and excise of the city of Brooklyn, by virtue of the powers vested in him under the laws of the state of New York, did, on the 18th day of June, 1892, appoint Alfred L. Sweeney to be a chief engineer of patrol boat of the police force of the city of Brooklyn."

Under and by virtue of this appointment the relator appears to have acted as chief engineer of the Brooklyn police patrol boat until about the 1st day of November, 1897, when the commissioner of police and excise (then Leonard N. Welles) abolished the position, as appears by the following extract from his official minutes of that date:

"Whereas, the steam vessel known as the Judge Moore, and formerly used by this department, has been sold by the comptroller of the city of Brooklyn, under proper authority from the common council, and as there is now no steamboat or vessel of any description used by the department which requires a licensed engineer to operate, and as the services of an engineer are no longer required upon any vessel used by this department, it is therefore determined that the position of chief engineer of patrol boat in this department be, and the same hereby is, abolished on and after this date, for the reason that there is no longer any need for such an engineer; and it is further determined that the services of A. L. Sweeney, who has been heretofore employed as such engineer, be dispensed with from this date, and he hereby is dismissed for the same reasons."

No charges were ever preferred against the relator, and the sole cause assigned for his removal was that the position which he occupied had become unnecessary, and had, therefore, been abolished. In the present proceeding he seeks recognition as chief engineer of a patrol boat in the police force of the city of New York, on the ground that the action of Commissioner Welles in assuming to remove him from his position as chief engineer of the Brooklyn police patrol boat was unlawful and ineffective, and hence that by the operation of the Greater New York charter he has been transferred to the police service of the consolidated city. He sued out an alternative writ of mandamus, to which the police board interposed a return, and the issues thus joined came on for trial before Mr. Justice Maddox, who directed a dismissal of the writ at the close of the evidence in behalf of the relator. From the final order entered upon such direction, and from an order denying a motion for a new trial, the relator has appealed.

The learned trial judge was of the opinion that the relator was not a member of the Brooklyn police force at all, but was merely a person in the employment of the police department, who might lawfully be removed by the commissioner without first being tried upon charges. This view is sustained by the language of the charter of the city of Brooklyn prescribing the composition of the police force: "The police force shall consist of a superintendent, inspectors, captains, sergeants, detective sergeants, roundsmen, patrolmen, bridge-keepers, doormen, the telegraph superintendent, telegraph operators and linemen." Laws 1888, c. 583, tit. 11, § 4, as amended by Laws 1889, c. 158. In this particularity of specification, the omission to mention the engineer of the police patrol boat is a clear indication that he was not to be considered "on the police force." The police patrol boat was described in the Brooklyn charter as "a suitable vessel to carry such force as may be required to protect the shores of the city"; and, in addition to such crews as he might deem necessary, the commissioner was authorized to detail not to exceed three patrolmen to act as pilots upon said vessel. Laws 1893, c. 109. The

authority to employ a crew, however, did not extend so far as to make the members of that crew members of the Brooklyn police force merely by virtue of their employment in the management and navigation of the vessel. If the chief engineer became a member of the force because he was to be classed as one of the crew, it is difficult to perceive why a deck hand could not make the same claim. By section 282 of the Greater New York charter it was enacted that all clerks, matrons, secretaries, and other subordinates, assistants, and employés attached to or in the service of the departments or either of the boards or commissioners specified in section 273, until otherwise provided, should perform like services and duties, and receive therefor the same salaries or compensation, as before the charter took effect. Section 273 consolidated the police forces and departments of the several constituent municipalities of the new and greater city, and among the commissioners whose office was specified therein was "the commissioner of police and excise of the city of Brooklyn." Hence the effect of section 282 was to retain in the service of the Greater New York such employés of the commissioner of police and excise in the city of Brooklyn as were serving in his department at the time when this portion of the charter became operative. The dismissal of the relator, however, took place a month earlier; and if the trial judge was right—as I think he was—in regarding the chief engineer of the patrol boat as an employé of the police department, not belonging to the police force, he had wholly ceased to have any connection with the Brooklyn department at the time when section 282 of the Greater New York charter took effect. But it is argued in behalf of the appellant that, even if the relator was only an employé, he was entitled to the protection prescribed by section 2 of title 3 of the charter of the city of Brooklyn (Laws 1888, c. 583), which, among other things, provided as follows:

"No person employed on the police force or on the force for extinguishing fires shall be removed without cause, and then only after a public trial by the head of his department and after having been found guilty of misconduct or neglect of duty, or having been adjudged incapable of performing his duty; the evidence on such trial shall be taken in full, and kept as a public record."

The phrase "employed on the police force," as here used, however, evidently contemplates membership in the force, and the provision has not been construed as a prohibition against the removal without trial of mere employés in the police department.

There is an entirely different ground from that which we have been considering, on which the action of the court below can be sustained. While the statutes prohibiting the removal of persons from the public service except for cause shown, and after a hearing had, are positive in form, "it is clearly not their intent to give to occupants of such positions a life tenure, where, upon grounds of economy, or for other proper reasons, the office or position is in good faith abolished. In People v. Adams (Sup.) 4 N. Y. Supp. 522, it was held that an honorably discharged veteran of the Union army might be removed for the reason that the position he occupied was abolished on economical grounds, and that its duties might be at-

tached to an existing office which was held by a person not a veteran, and that such a removal was not in violation of the statutes relating to veterans of the war of the Rebellion holding positions in the city of Brooklyn." Martin, J., in People v. City of New York, 149 N. Y. 215, 225, 43 N. E. 554, 556. It was also said in the case cited that if the opposing affidavits put in issue the facts alleged in the relator's papers, and tended to show that the relator was discharged in good faith, and upon economical grounds, the question should be tried upon an alternative writ of mandamus. Here the alternative writ, following the language of the petition, alleged upon information and belief that "said position so occupied by relator was not abolished in good faith, and for sufficient reason, and has not in fact been abolished, for the reason that the duties performed by the relator as such chief engineer have, since his removal, been discharged by William Powers, or some other person or persons to relator unknown." The answer or return of the respondents contained averments contradicting these allegations. The minutes of the commissioner of police and excise for November 1, 1897, showed the abolition of the relator's position for the reason that there was no longer any steamboat or other vessel used by the department requiring the services of a licensed engineer to operate it. No evidence was offered to prove that the determination thus recorded was not actually made in good faith, or that the reasons assigned for it were not true in fact; nor did the relator's counsel ask to go to the jury on any such question. Hence, on this ground alone, the writ was properly dismissed. I think the orders appealed from should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.