SPONENBURGH *v.* GILLESPIE.

MUNICIPAL CORPORATIONS — POLICE DEPARTMENT — CIVILIAN EMPLOYEES—DISCHARGE—RIGHT TO HEARING.

Under Act No. 416, Local Acts 1901, providing for the police government of the city of Detroit, the superintendent of the signal service and his assistant were not members of the police force, entitling them to a hearing on charges preferred before the police commissioner before discharge from the service; they being merely civilian employees of the police department.

Appeal from Wayne; Hally, J. Submitted June 14, 1918. (Docket No. 24.) Decided October 7, 1918.

Bill by Charles L. Sponenburgh and another against John Gillespie, commissioner of police of the city of Detroit, to enjoin the dismissal of plaintiffs from the police department. From a decree for plaintiffs, defendant appeals. Reversed, and bill dismissed.

*A. B. Hall* and *Frank W. Atkinson,* for plaintiffs.

*Allan H. Frazer,* for defendant.

BIRD, J. Defendant, as police commissioner, gave plaintiffs notice that they would be discharged on July 1, 1916, from their respective positions with the police department of the city of Detroit. On June 28th they filed this bill praying for a writ of injunction to prevent such removal. Plaintiffs have been connected with the department for several years, and at the time of their discharge plaintiff Sponenburgh was acting as superintendent of the signal service of the department, and plaintiff Cocup was acting as his assistant. Their claim is that they cannot be dismissed by the commissioner without charges being preferred and an opportunity given to be heard in their defense. They base this contention on section 9 of the act, the material part of which reads:

"The qualifications, enumerations and distribution of duties and mode of trial and removal from office of each officer and member of said police force shall be particularly prescribed by rules and regulations of said commissioner of police, and no person shall be appointed to or hold office in the police force who is not a citizen of the city of Detroit, shall not have resided in the State of Michigan two years next preceding his appointment, who cannot read and write the English language, or who has ever been convicted of any crime: *Provided,* That no person except the superintendent, deputy superintendent, detectives, the attorney, the surgeon, secretary and property clerk, shall be removed from said force, except upon written charges preferred against him to the commissioner of

police, and after opportunity of being heard in his defense." * * * Act No. 416, Local Acts 1901.

Defendant takes the position that plaintiffs are not members of the police force within the meaning of the act, but are civilian employees of the department and, therefore, may be summarily dismissed.

Section 1 of the act provides:

"That the powers and duties connected with and incident to the police government and discipline of the city of Detroit shall be vested in and exercised by one commissioner of police, a superintendent and other officers, and patrolmen, as hereinafter provided."

Section 5 confers on the commissioner authority to appoint officers and patrolmen, and section 9 prescribes certain qualifications as a prerequisite to appointment to the police force.

A study of the act gives the impression that it was framed with the idea of making membership in the force attractive to qualified men. To promote the efficiency of the force the act provides that official positions shall be filled by promotions from the ranks. Also provides accident insurance for them. Freedom from dismissal is guaranteed to them unless charges are preferred and opportunity for a hearing given. These and other provisions make for the good of the service, but they appear to be reserved for the benefit of the members of the force.

We think it would hardly be contended that the employees engaged in setting the telegraph poles and stretching the wires thereon were members of the force and entitled to these privileges, and yet why not, if the man who directs their work is a member of the force? Neither the superior nor inferior connected with the telegraph line is filling any position created by the statute, nor is either doing any police duty. The only reference made by the act to the business in

which they are engaged is found in section 7 where, defining the powers of the commissioner, it says:

"He shall have the custody and control, of all public property, books, records and equipment belonging to the police department, and shall have power to erect and maintain such lines of telegraph in such places within said city as for the purposes of police shall deem necessary." * * *

It must have been understood by the legislature that an organization of this character in a city the size of Detroit would necessarily be obliged to employ agents and servants to assist in its operation. Indeed, section 9 gives evidence of this when it says that:

"All other salaries and compensation to the officers, appointees and *employees* of the department shall be prescribed and determined by the commissioner of police and shall be paid semi-monthly to the persons entitled thereto."

Had the legislature intended that the employees of the department should be members of the police force and entitled to the privileges thereof, we assume it would have so indicated by some appropriate language.

We are of the opinion that section 1, construed with other sections of the act, restricts the membership of the force to the officials and patrolmen whose positions have been created by the terms of the act. It is true, plaintiffs were officials in the business in which they were engaged, but the official positions which they held were neither created nor recognized by the statute. Our conclusion is that plaintiffs are not members of the police force but are civilian employees of the police department. In support of this interpretation, see *People, ex rel. Sweeney,* v. *York,* 43 App. Div. 444 (60 N. Y. Supp. 208).

The chancellor who heard this case below was of a different opinion. He was inclined to the opinion that plaintiffs were members of the police force. In the closing paragraph of his opinion he says:

"Was the commissioner justified in removing these men without a hearing? In two places in the act the exceptions are made to the general rule. In one case a negative precedes the exception, and the use of a negative in the statute makes the statute imperative." Citing *Connecticut Mutual Life Ins. Co.* v. *Wood*, 115 Mich. 444.

The chancellor's conclusion is quite right, if it be conceded that plaintiffs are within the class to which the exception refers, but we are unable to agree with him that plaintiffs are within that class.

With the main question decided we think it will be unnecessary to consider the other questions discussed. The decree must be reversed and one entered in defendant's behalf denying relief to plaintiffs and dismissing their bill. No costs will be allowed.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.