115 444
s74NW 656
132 ¹263
e132 ¹268
e132 ¹269

115 444
136 ²129
d136 ²134

115 444
137 503
137 506

115 444
143 624

115 444
147 ¹686
147 ¹687
148 ²585

CONNECTICUT MUTUAL LIFE INSURANCE CO. *v.* WOOD.

1. TAX SALES—VALIDITY—LANDS PREVIOUSLY BID TO STATE.
   Lands that have been bid off to the State under the tax law of 1893 (Act No. 206), and are still held by it, cannot again be sold for the delinquent taxes of succeeding years, in view of the provision of section 61 of the act that "lands hereafter bid off in the name of the State, and thus held, shall not be included" in the petition of the auditor general for the sale of delinquent lands, notwithstanding the other incompatible provisions of the statute; and a sale made in violation of said section will be set aside on petition filed by the landowner.

2. SAME—TITLE OF PURCHASER.
   A tax sale under the law of 1893, if valid, operates to vest in the purchaser an absolute title in fee, whether that purchaser be the State or a private individual.

3. STATUTES—CONSTRUCTION—NEGATIVE TERMS.
   The use of negative words in a statute is ordinarily indicative of a legislative intent to make the provision imperative.

4. SAME—PRACTICAL CONSTRUCTION.
   Where the language of a statute is plain and unambiguous, there is no room for the application of the doctrine of practical construction; nor can such construction be controlling in any case where it has been challenged with reasonable promptness.

5. TAXES—EQUITY JURISDICTION.
   The court of chancery has only such jurisdiction in tax proceedings as is conferred upon it by statute.

6. SAME—DUTY OF TAXPAYER.
   One who seeks relief from a void tax sale in a court of equity will be compelled to do equity.

7. SAME—PURCHASER AT VOID SALE.
   The various provisions of law which are designed to protect the purchaser at a void tax sale are referred to and discussed.

Appeal from Wayne; Carpenter, J. Submitted October 15, 1897; opinion filed December 21, 1897. Rehearing granted January 4, 1898; reargued February 28, 1898; former opinion affirmed March 29, 1898.

Petition by the Connecticut Mutual Life Insurance Company against Eugene B. Wood and Roscoe D. Dix, Auditor General, to set aside certain tax sales. From a decree for petitioner, defendant Wood appeals. Affirmed.

*Moore & Goff* (*John D. Conely*, of counsel), for petitioner.

*Charles W. Nichols* and *A. A. Ellis*, for defendant Wood.

*Fred A. Maynard*, Attorney General (*Avery Bros. & Walsh*, of counsel), for defendant Auditor General.

LONG, C. J. In 1894, defendant Wood purchased the lands involved here at the annual tax sales held in Wayne county for that year. He also at the same time purchased the same descriptions of land from what is known as the "State tax land list," those lands having been bid in by the State at the sale of 1893, and the bids still held by the State. The petitioner filed its petition on March 29, 1897, in the Wayne circuit court, in chancery, to have these sales set aside and the deeds canceled, alleging, among other things, that it was, and for several years prior thereto had been, interested in such premises, being the owner of one tract and mortgagee of the other; that the first is of the value of $5,000, and the other, $14,000. There are several grounds upon which it is asked to have the sales set aside, only one of which need be considered, as that is decisive of the case. Both of these parcels of land were bid off to the State at the tax sales of 1893 for the taxes of 1891, and were so held by the State du ring the years 1893 and 1894, and at the time the lands were included in the petition made by the auditor general for the sales to be made in 1894 for the taxes of 1892.[1]

Section 61 of the tax law of 1893 (Act No. 206, Pub. Acts 1893), among other things, provides, "Lands hereafter bid off in the name of the State, and thus held, shall not be included in such petition;" referring to the petition

---

[1] It was conceded by defendant Wood that the sales for 1891 were void, and no reliance was placed upon them.

of the auditor general for the sale of lands returned delinquent. The contention of counsel for petitioner here is that, these lands being held by the State under the bids of 1893 for the taxes of 1891, the auditor general had no authority under this statute to include them again in the petition for the sales in 1894 for the taxes of 1892. On the other hand, counsel for Mr. Wood admit that this might be a reasonable construction of the statute were it not for other provisions to which they call attention. Section 68 provides:

"All lands bid off for the State as provided in this section shall continue liable to be taxed in the same manner as if not held as belonging to the State, and all such taxes shall be a charge and lien upon such lands as in case of other tax lands, except as hereinafter provided."

Section 70 provides:

"If any parcel sold under the provisions of this section shall also be offered at the same sale as State tax lands, the purchaser must also, at the same time, become the purchaser from the State tax land list, and pay the taxes, interest, and charges remaining unpaid thereon, and must pay all the remaining taxes assessed for the year for which he purchased, with interest thereon. All sales made in contravention of this requirement shall be void."

Section 80 provides:

"In all cases where a description of land is offered as State or county tax land, and the same description, or any part thereof, shall be offered in the list of lands delinquent for taxes, as provided in this act, the county treasurer shall inform the person bidding for the same of that fact, and such person shall be required to purchase said description at the same time, and, if he refuses so to do, the treasurer shall refuse his bid, and shall again offer it as if no bid had been made thereon."

Section 85 provides:

"Neither the sale of State tax lands, nor the sale of any of the bids of the State for which the time of redemption has not expired, shall in any wise prejudice the right to enforce the collection of any tax subsequent to the year or years for which the same has been sold as aforesaid; and for the taxes and charges remaining unpaid for said sub-

sequent year or years the auditor general shall cause such lands to be offered in regular succession at the next ensuing annual sales for taxes, giving notice as required by law, unless previously redeemed or otherwise discharged."

The contention is that, reading these sections together, but one conclusion can be reached as to what the legislature intended, and that is that a resale may be made each year though the State holds the lands under former bids.

We think this construction cannot be given the statute. The provisions of section 61 above quoted may be given force, and yet the other provisions referred to by counsel stand. What is meant by the language used in section 61 is that when lands have been bid off to the State, and are yet held by the State, such lands shall not again be sold for the delinquent taxes of succeeding years. Of course, it would follow that, where the State had assigned its bid, the lands would be again subject to sale, as it would be the duty of the purchaser of such bid to pay the taxes of succeeding years. The auditor general, under the provisions of section 61, had no authority to include these lands in the petition for the sale for the year 1894, as at that time the State held them under the bids of 1893.

The court below, by its decree, having reached the right result, that decree must be affirmed, with costs against defendant Wood, he alone having appealed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, J., did not sit.

### ON REHEARING.

GRANT, C. J. After able arguments by several eminent counsel, several exhaustive briefs, and a careful examination by ourselves, we again reach the same conclusion stated in the former opinion.

1. Counsel for the defendants now seek to sustain their position by applying a restricted meaning to the word "lands" in the statute. They insist that it does not mean the lands and the title thereto, but only such interest as

the State has acquired by former sales, and that only that interest is excluded from the petition. This contention cannot be maintained. The term has a well-defined meaning. There may be cases where, in instruments or in laws, other language may be used, showing that a term is used in a restrictive sense. We, however, find no language in this statute which can be construed into a restriction of the well-understood term "lands." "In law, 'land' signifies any ground forming part of the earth's surface which can be held as individual property, whether soil or rock, or water-covered, and everything annexed to it, whether by nature, as trees, water, etc., or by the hand of man, as buildings, fences, etc." Cent. Dict. When the lien given by the statute is foreclosed by the court in chancery, the evident purpose is to convey to the State or to the private purchaser the absolute title in fee, a title which completely destroys the original one. It is of no significance that the State does not bid in the land for speculative purposes, or that it acquires no possessory rights therein, or that it remains liable to taxation for successive years. When the lien is foreclosed, the land sold, and the time of redemption expired, the State or the private purchaser owns the complete title in the land, or it owns nothing. The law may preserve the lien in case the title is held void, but that does not affect the quantity of the title conveyed, which is the entire or nothing.

2. Section 61 provides for the contents of the petition, which must have annexed thereto lists or schedules containing "a description of all lands in such county upon which taxes have remained unpaid for more than one year prior to the 1st day of May, 1893, or the 1st day of May of the year in which the petition is filed," etc. Then follows an express prohibition as to lands "hereafter bid off in the name of the State, and thus held." It is conceded that this language, standing by itself, can have but one meaning, and that it should control but for other provisions of the statute which are incompatible with it.

Usually, when negative words are used in a statute, it

becomes imperative and mandatory.   There is no room in such case to hold that the language is directory simply. *Pond* v. *Negus*, 3 Mass. 230; *Stayton* v. *Hulings*, 7 Ind. 144; *Koch* v. *Bridges*, 45 Miss. 247; *Sibley* v. *Johnson*, 1 Mich. 380.   Can this express language, prescribing what shall not be included in the petition, be set aside and held meaningless, from the fact that there are other provisions following it in the statute which seem to contemplate that the petition might also include things which were thus excluded?   We think not.   These incompatible provisions appear to have been taken bodily from previous statutes.   Considering the frequent and continuous changes made by the legislature in the tax laws, the haste of legislation, and the inexperience of many upon the subject, it is not surprising that many incongruities creep in.   This court has frequently had to deal with such legislation, which oftentimes presents difficult questions.   It was said by Mr. Justice CAMPBELL in *Attorney General* v. *City of Detroit*, 71 Mich. 97:   "The frequent and careless revision and re-enactment of charters for Detroit has led to a good deal of confusion."   Treating the question from the statute alone, we are compelled to hold that the incompatible sections quoted in our former opinion do not destroy the clear and unequivocal provision of section 61.

In addition to the sections cited in the former opinion, section 127 of the tax law of 1893 is also cited as being incompatible with the provision of section 61.   It reads as follows:

"Whenever it shall hereafter appear that any lands delinquent for taxes have been bid off to the State for a consecutive period of more than three years, and that no application has been made to redeem or purchase the same, it shall be the duty of the auditor general and the commissioner of the state land office, when requested so to do by the township board of the township wherein such delinquent lands are situated, to cause an examination of such lands to be made as soon as *practicable*, to ascertain their value, and the cause of the non-payment of taxes thereon; and if it shall appear that such lands are barren, swamp,

or worthless lands, and have been abandoned by the owner, upon a certificate being filed by the examiner to that effect, the auditor general is hereby authorized to make a transfer by deed of the same to the State, as to an individual, as provided in this act, which deed shall be recorded in the proper county, and a copy filed in the office of the commissioner of the state land office, and said commissioner shall thereafter hold such lands as State lands, subject to sale as hereinafter provided."

It must be remembered that the act of 1893 does not exclude from the petition lands which had theretofore been bid in by the State, but only lands which should be thereafter bid in and held. The State at that time owned many thousand parcels of land, bid in at former tax sales. To such lands section 127 clearly applies, and after there had been one sale of lands under the act of 1893, which had been sold annually for the taxes of previous years, they would come within this section. To this extent, section 127 can be given effect in harmony with section 61.

3. It is, however, very strenuously urged that the auditor general's department has given a practical construction to the statute, which is binding upon the courts. Prior to 1882 no judicial determination of the validity of the tax prior to the sale was provided for. Owing to the carelessness or negligence, or both, of officials charged with the assessment and collection of taxes, the proceedings were notoriously defective, and a tax title was seldom sustained by the courts. The statutes prior to that time expressly provided for annual sales from the State tax land list and from the tax record for the current year. The provision of section 61 first appeared in the tax law of 1882, and in the identical language found in the present law. Act No. 9, Pub. Acts 1882, § 53 (1 How. Stat. p. 1279). Nothing is found in that statute to qualify or restrict the provision. Section 66 of that act provided for the resale of lands bid off to the State. The auditor general was to furnish a statement of all such lands to the county treasurer. The auditor general was to publish a notice for three weeks next previous to the day fixed for

the annual tax sale. It also provided: "Such notice shall not describe the lands, or state the amount of taxes and charges thereon." This act, for the first time in the history of the State, provided for a judicial determination upon the validity of the tax before sale, and contemplated that a decree and sale should be final and conclusive. The methods of the old law were entirely superseded, and have no bearing upon the question before us. If it be conceded that the auditor general included, in the petition filed under that law, lands which had been bid off to the State, and thus held, such action would not constitute a practical construction. There was nothing to construe. The language was so plain that "he who runs might read" and understand it. Such action would be a practical disobedience, rather than a practical construction.

It was conceded by the attorney general upon the argument that this provision in the act of 1882, where it first appeared, was susceptible of but one meaning, and that lands bid in by the State, and thus held, must be excluded from the petition. When were its purpose and meaning changed? The auditor general could not change them by disobeying them. There is nothing in the acts passed between 1882 and 1893 to indicate such a change. For the first time we find in the law of 1893 some incompatible provisions. This law of 1882 became inoperative by an equal division of this court. *State Tax-Law Cases,* 54 Mich. 350. It was repealed in 1885, and the legislature returned to the old system. This provision was restored by the act of 1889. It was eliminated by the act of 1891, and again restored in 1893. Section 69 of the law of 1889 contains the same provisions as does section 66 of the law of 1882 in regard to State tax lands, viz., the auditor general furnishes the county treasurer with the same statement, and publishes a four-weeks notice, which "shall not describe the lands, or state the amount of taxes and charges thereon." There is nothing in the law of 1889 which would justify the auditor general in including in the petition the prohibited lands. The con-

struction placed upon the act of 1893 has been too early challenged to justify the courts in following the construction apparently placed upon it by the auditor general's department. We are not pointed to any opinion from the legal department of the State sustaining such construction, and which has been followed, as was the 'case of *Attorney General* v. *Glaser*, 102 Mich. 408.

The policy of this provision in the acts of 1882, 1889, and 1893 was, as already stated, to adjudicate the validity of the taxes before sale, and also to avoid the expense of publication. The taxpayer was to be given his day in court. If the decree was against him, his only remedy was to pay; and, if he did not pay, the State was clothed with the complete title. If he appeared, the decree was conclusive. If he did not appear, it was equally conclusive, provided there were no jurisdictional defects which were not within the curative provision of the law. The State was sufficiently protected, and the legislature had prescribed the terms under which the State should part with its title. The land was still subject to be taxed, and he who purchased from the State was required to pay all the subsequent taxes assessed upon it before he could obtain his deed. If the taxpayer redeemed within the time provided from the sale in any year, the tax for the subsequent year still remained a lien upon his property. If he redeems before the filing of the petition in the subsequent year, his land can be included in such petition as delinquent for the year following the one for which it had been sold, and from which he redeemed. If he redeemed too late for inclusion in such petition, we think it may be included in the petition of the next year. If, however, there were no way provided for the enforcement of such liens, there would simply be a defect in the law. The court of chancery has only such jurisdiction in tax proceedings as the statute gives it. Section 61 alone confers that jurisdiction, and is substantially the same as in the previous acts. It differs from them only · in being more explicit as to the contents of the petition. The legislature

was particular to state what the petition should contain, and positively excluded certain things from it. No other section of the statute attempts to limit or define its contents, or to confer jurisdiction. Naturally, therefore, the auditor general must look to this section for his authority in preparing his petition, and that authority cannot be enlarged by the courts.

4. It is provided by section 131 that the lands mentioned in section 127 shall be subject to homestead entry. Counsel for the auditor general made a statement in their brief of the number of acres on which taxes had been canceled under this provision, and also the number that had been homesteaded, and ask what shall be done with these homesteaders, and what is to become of their improvements. The plain provisions of the law could not be set aside, even though disastrous consequences should follow; but the homesteaders are amply protected. Section 73 provides that no sale shall be set aside where the purchaser, his heirs or assigns, have been in actual, undisputed possession for five years; and, whenever such sale is set aside within five years, the court shall determine and decree the value of improvements made by the purchaser, and give judgment therefor, and issue execution to collect the same from the claimant before putting him in possession. *Croskery* v. *Busch*, (Mich.; March 15, 1898) 74 N. W. 464. See, also, section 104 of the act. So, also, in an action of ejectment, under 3 How. Stat. § 7836, if the plaintiff recover, the defendant is entitled to compensation to the extent that the buildings and improvements made by him shall increase the present value of the premises. Under these liberal statutes, no great hardships can be imposed upon the homesteader.

5. It is also urged that the State would suffer great loss in the taxes it would be compelled to refund in consequence of this decision; and a statement is furnished by the auditor general, and incorporated in the brief of his counsel, showing the amount of such anticipated losses. We do not think that the conclusion of the auditor general

will necessarily follow. If, as in the present case, the taxpayer petitions the court in chancery in the auditor general's proceedings to foreclose a lien, the court will compel him to do equity. If the taxpayer is in possession, and files a bill to remove a cloud from the title, the court may then compel him to do equity. If, in an action of ejectment, the title is held void, or if the purchaser is refunded his money, it does not follow that the lien is destroyed. If the present law does not provide for that emergency, it can be amended. authorizing proceedings to foreclose such liens.

6. Other objections are raised, which are not important to consider. They affect mainly the proceedings at the time of and after the decree. They are defects attributable to the gross carelessness or negligence of those charged with the execution of the revenue laws of the State, and are without excuse. Whether they are fatal we need not discuss. They should never have occurred. There is no reason why these proceedings should not be conducted according to the law. It is equally inexcusable in landowners to permit valuable property, as in this case, to be sold for a few dollars of taxes. There is no prevailing equity in the claim of either party. It is essential to just and equal taxation that these proceedings be such as to convey a good title to the purchaser. Courts should liberally construe a revenue statute, so that the revenue shall be collected; but when the State or a purchaser rests upon the letter of the law, both must be content with the plain interpretation which the revenue law will bear. When the State takes the property of the citizen, it is not entitled to any strained construction of the law in its favor. The petitioner in this case offers to pay the taxes. Speaking for myself, I regret that the law does not provide a penalty to be imposed upon it, and also upon the officials, for such gross neglect of duty. The lands are stated to be worth about $19,000, while the taxes amount to less than $50. When the revenue officials will make just and honest assessments, and see that the proceedings

to enforce them are regular, which they can easily do, there will be little difficulty in the collection of taxes. Our conclusion is that there was no authority of law for including the petitioner's lands in the petition, and that the sale was void.

It is urged that adherence to our former decision will lead to confusion in the pending proceedings before the various circuit courts on the pending May sales. If any remedial legislation upon this or any other point is necessary and urgent, the legislature is now in session, and can adopt such measures as it may consider necessary, if the executive, by special message, so suggests.

The decree is affirmed. No costs will be allowed the petitioner.

The other Justices concurred.