## HUGHES *v.* JORDAN.

1. TAXES—COLLECTION—CONCLUSIVENESS OF DECREE.

A valid decree for the sale of land delinquent for taxes forecloses all questions as to the regularity of the prior proceedings; and hence an objection cannot afterwards be raised that no demand for the payment of the tax was made by the township treasurer upon the person assessed, nor any effort made to collect the same from his personal property, as required by the statute.

2. SAME—STATE LANDS—PURCHASE PRICE.

Under section 84 of the tax law of 1893 (Act No. 206, Pub. Acts 1893), providing that any person may purchase State tax land by paying the amount for which the same was bid off to the State, with interest thereon, together with the other taxes "remaining a lien" on the land at the time of purchase, a deed of State land, issued without the payment of a tax for a subsequent year, which was a lien on the land at the time of purchase, is void, even though such tax had not yet been returned by the collecting officer.

3. VENDOR AND PURCHASER—QUITCLAIM DEED.

A purchaser by quitclaim deed obtains no better title than that held by his grantor.

Appeal from Muskegon; Russell, J. Submitted February 2, 1898. Decided July 18, 1898.

Petition by Edward Hughes against Patrick Jordan for a writ of assistance. From an order granting the writ, respondent appeals. Reversed.

*Stephen H. Clink*, for petitioner.

*M. C. Kelley* and *Brown & Adams*, for respondent.

HOOKER, J. Hughes, the petitioner, is the purchaser of the premises in controversy from Clink, who bought them from the State, said lands having been bid in for the

State for the tax of 1893. The auditor's deed was issued to Clink on July 27, 1897, shortly before he deeded to Hughes. On September 20, 1897, application was made by Hughes to the court which rendered the decree for a writ of assistance, to enable him to obtain possession. The defendant, Jordan, purchased the lands from Kelley, by contract dated April 2, 1897. Kelley had possession from April, 1890, under a contract. The defendant alleged in his answer, and offered to prove, that, after the issue of the deed from the auditor general to Clink, Kelley tendered an amount equal to the taxes of 1893 and 1896 to the auditor general, and demanded a deed; that no demand for payment of the tax of 1893 was made by the township treasurer of Kelley, as provided by section 46 of the tax law of 1893 (Act No. 206), although said treasurer knew that Kelley claimed to own the land, and had paid the tax for 1892 to him; that no attempt was made by the township treasurer to collect the tax from the personal property of said Kelley, which might have been done; and that the deed was void for the further reason that it issued without payment of the tax of 1896, which was at that time a lien upon the premises, and which is still unpaid. The answer concluded with a prayer " that the decree be reopened and vacated, and a rehearing granted, and defendant allowed to show what portion of the tax for which the land was sold is illegal and void, and that the sale and deed be declared void, and defendant be allowed to pay such taxes as are legal." The court did not permit such proof to be made, denied a rehearing, and ordered the writ of assistance to issue as prayed.

Most of the questions raised relate to irregularities anterior to the decree under which the State purchased the land, and these are covered by the recent cases of *Cole* v. *Shelp*, 98 Mich. 58; *Muirhead* v. *Sands*, 111 Mich. 487; *Hilton* v. *Dumphey*, 113 Mich. 241; *Auditor General* v. *Hutchinson*, Id. 245; and *Auditor General* v. *Sparrow*, 116 Mich. 574. The following questions are, however, open upon this record, viz. :

1. Whether the circuit court had jurisdiction in the tax proceedings under which the State purchased.

2. Whether the proceedings subsequent to decree were void.

3. Whether the purchase by Clink of the State's title was accompanied by payment of the tax of 1896, and, if not, whether that fact rendered the deed void.

4. Whether a writ of assistance may be issued in case the petitioner's title is sustained.

5. Whether it should be denied, and a rehearing in the original tax case granted.

We may dispose of the first of these questions by saying that there is nothing in the testimony offered which tended to show a want of jurisdiction in the original proceedings, the questions presented being within the principles recognized in the cases hereinbefore cited.

Whether Clink should have paid the tax of 1896 when he bought the State title involves a question of fact. It does not appear when the money was paid and title purchased, though from the defendant's brief we infer that it was some time before the deed was issued, and perhaps before the auditor general was advised that the land was returned to the county treasurer as delinquent, and possibly before such return. Inasmuch, however, as the answer alleges a violation of section 84 in that regard, the proof should have been taken, unless we are to say that the failure to pay such tax would not render the deed void. It may be said that, the title being in the State, others have no interest in the amount received by the State for its title, and that subsequent purchasers for value may rely upon the title conveyed by the State. Here, however, the petitioner relies upon a quitclaim deed, and is therefore on no better footing than his grantor; and, as will be seen by section 85, the owner may be interested in having subsequent taxes paid, and it may also happen that he has himself applied to purchase the lands, offering to pay all taxes and charges required by law to be paid by the purchaser. That is said to have been done in this case.

The auditor general has no authority, under section 84,

to sell and deed State lands, except upon receiving the price required by law, and this the purchaser is bound to know. The taxes become a lien upon the land early in December,— a fact that is known to the auditor general, and of which the purchaser must take notice. Before the auditor general is authorized to part with the title of the State, he must be paid all taxes which remain a lien upon the land. After the time that taxes have become a lien, both purchaser and auditor general are aware that taxes have become due and payable which have not been returned. The purchaser can procure and the auditor general may require evidence that they have been paid, if such is the fact. It may be said that this imposes onerous burdens upon the purchaser; but they are not so serious as to justify the disregard of an unambiguous requirement of the statute (section 84). If this was not done, and such taxes remained a lien on the land when the deed was made, the title was not conveyed to Clink, and the right of others who might comply with the law to purchase was not cut off. As we have no means of determining the fact (proof being excluded upon this point), the order must be reversed, and the cause remanded for a rehearing, with costs to the appellant.

The other Justices concurred.