### MUNROE *v.* WINEGAR.

1. Tax Deeds—Collateral Attack—Suit to Quiet Title.

A tax deed cannot be attacked in a suit to quiet title, even under an answer in the nature of a bill of review, on the ground that the land was held by the State under former bids at the time of the filing of the auditor general's petition, and should therefore have been excluded therefrom (*Connecticut Mut. Life Ins. Co.* v. *Wood*, 115 Mich. 444), but such question can only properly be raised by interposing in the original proceeding. *Peninsular Sav. Bank* v. *Ward*, 118 Mich. 87, followed.

2. Tax Sales—Validity—Purchase from State List.

A tax sale is not invalid because the land was offered only on condition that the purchaser take the same description from the State tax land list, in accordance with the statute (1 Comp. Laws, § 3893), though the prior sale to the State was void.

3. Same—State Tax Lands—Payment of Tax Liens.

The rule requiring a purchaser of State tax lands to pay all taxes remaining a lien thereon at the time of his purchase (*Hughes* v. *Jordan*, 118 Mich. 27) does not apply to a purchase

of such lands at a public sale by the county treasurer. *Berkey* v. *Burchard*, 119 Mich. 105, followed.

4. SAME—NOTICE OF SALE—SUFFICIENCY.

Under section 79 of the tax law of 1893, requiring a notice of sale of State tax lands to be published "for four weeks successively, which shall be construed to mean four publications once a week, next previous to the first Monday of December," a publication once a week, occurring four times next previous to such Monday, is valid, though less than a week transpires between the last publication and the day of sale, and less than four weeks between the first publication and such day. *Bacon* v. *Kennedy*, 56 Mich. 329, distinguished.

5. LICENSE—PURCHASE OF OUTSTANDING TITLE BY LICENSEE.

Where a written license to use certain lands excepted "any rights that may have accrued by trust deed" from a certain person, the licensee was not precluded from purchasing a tax title to land held by such trust deed.

6. EQUITY PRACTICE—DISCLAIMER—COSTS.

A defendant in a suit to quiet title, who has disclaimed, cannot be subjected to costs.

Appeal from Ottawa; Padgham, J. Submitted April 3, 1901. Decided October 1, 1901.

Bill by Stephen L. Munroe against William Winegar, Luman Jenison, Lucius Jenison, and the First National Bank of Grand Rapids to quiet title. From a decree for complainant, and an order denying a rehearing, defendants appeal. Modified as to defendant Winegar, and affirmed.

*Walter I. Lillie*, for complainant.

*James J. Danhof* and *Bundy & Travis*, for defendants.

MONTGOMERY, C. J. The original bill in this case was filed to quiet complainant's title, which he claims to own by virtue of a tax title for the taxes of 1893. Decree passed in favor of the complainant, and later on the defendant bank filed a petition for a rehearing, which the court took under advisement, but finally denied. An

appeal is taken both from the original decree and from the order refusing a rehearing.

It is contended that the tax title is invalid for the following reasons:

1. Under the decision in *Connecticut Mut. Life Ins. Co.* v. *Wood*, 115 Mich. 444 (74 N. W. 656).

2. Because the land was never legally bid to the State for the taxes of 1893.

3. Because the complainant did not pay the taxes for 1895 at the time he purchased.

'4. Because there was no legal notice published of the State tax land sale in 1896, at which time Munroe bought.[1]

5. It is also contended on the part of the defendants that the complainant was not in a position to purchase a tax title, and file a bill against defendants based on his alleged possession of the premises, because prior to his purchase of the tax title he had obtained, through one Jenner, a license from Mr. Jenison to build a street railway across these premises, under which license he had built such street railway, and was maintaining and operating it on these premises at the time he tried to devest the title of his licensor by purchasing the alleged tax title.

It is claimed that, at the time the proceedings were taken to foreclose the lien for the taxes of 1893, the lands had been previously bid in to the State for the taxes of 1892, and were so held, and that, therefore, the sale for the taxes of 1893 is invalid, under the decision in *Connecticut Mut. Life Ins. Co.* v. *Wood*, 115 Mich. 444 (74 N. W. 656). We do not think this question can be raised in this collateral proceeding. This is a bill filed to quiet title. The complainant makes his title under an unreversed decree. This defense seeks to attack that title by averring that the court erred in granting the decree. The question is not different from that which would arise in an action of ejectment. In either case it is a collateral attack. *Peninsular Sav. Bank* v. *Ward*, 118 Mich. 87, 93 (79 N. W. 911). It is suggested that the amended answer, if a rehearing be granted, is in the nature of a bill of review.

---

[1] But see *Youngs* v. *Povey*, 127 Mich. 299, par. 2, and cases there cited.

But it is to be borne in mind that the State was interested in the original proceeding. The auditor general was a party to that proceeding. If the decree is vacated, the State will be called upon to reimburse the purchaser at the tax sale. The only proper way of raising the question would be by interposing in that proceeding.

It is said that the lands were never properly offered for sale, because, when offered, the purchaser was required to take the same descriptions of land from the State tax land list, and that, as the previous sales to the State were void, the land was never properly sold. We think this position cannot be maintained. On the face of the records, the lands were held under previous State bids; and we think it is not the intention of the law that a sale under a regular decree shall be vitiated because the purchaser is also required to pay the taxes apparently due the State under previous sales.

It is also claimed that the title of complainant fails because the purchaser failed at the time of the purchase to pay the taxes of 1895, which had been returned delinquent and remained unpaid. Defendants rely in support of this contention upon the case of *Hughes* v. *Jordan*, 118 Mich. 27 (76 N. W. 134). But this case was distinguished in *Berkey* v. *Burchard*, 119 Mich. 105 (79 N. W. 908), in which case it was held that the rule in *Hughes* v. *Jordan* does not apply to a purchase of the State's title on a public sale by the county treasurer. Counsel urge at considerable length that, under the language of section 70 of the tax law (Act No. 206, Pub. Acts 1893), the same rule should obtain as to taxes returned delinquent as was applied in *Hughes* v. *Jordan*. But the case of *Hughes* v. *Jordan* rested upon section 84 of the act, and the case of *Berkey* v. *Burchard* was intended to cover all cases of sales by the county treasurer.

The infirmity alleged in the notice of the sale at which complainant purchased is this: The notice was published on November 14th, 21st, and 28th, and on December 5th, and the sale took place on December 7th; and it is claimed

that, inasmuch as the first publication was less than four weeks prior to the sale, the notice was insufficient. Counsel rely upon the case of *Bacon* v. *Kennedy*, 56 Mich. 329 (22 N. W. 824), to sustain their contention. In that case it was held that, on a statutory foreclosure, the notice should be published for 12 successive weeks, and that the sale could not take place in less than 12 weeks from the first publication. It was said in reaching this conclusion, "The statute does not say that notice shall merely be published 12 times, once a week, but once a week 'for 12 successive weeks.'" The language of section 79 of the tax law, as it stood when this proceeding was had, was as follows: "The auditor general shall cause to be published *for four weeks successively, which shall be construed to mean four publications once a week, next previous to the first Monday of December* in the years provided by this act, a notice," etc. It will be seen that the publication next previous to the first Monday could not be a full week prior to Monday. It would be during the week. And so with the preceding weeks. The publication must be once during each of the weeks. We think that, under this statute, a publication once a week, occurring four times next previous to the first Monday, is valid, though less than a week transpired between the last publication and the day of sale, and less than four weeks between the first publication and the day of sale. The statute itself prescribes its own rule of construction.

But one other question remains to be considered. It is contended by the defendants that the complainant's possession was derived through a license which reads as follows:

"For and in consideration of the construction of a street railway to be constructed by George Jenner through Washington street, in the city of Grand Haven, along Water street and lake shore to Highland Park, in said city of Grand Haven, I hereby consent that said street railway may cross any real estate belonging to me on the lake shore between the westerly terminus on Water street and the said Highland Park.

"Dated April 15, 1895."

The above was in typewriting. There was added with a pen:

"I hereby sign the above without consenting or in any way assigning any rights that may have accrued to me by trust deed from J. W. Boynton."

And this was signed by Luman Jenison. It is claimed that Jenner was acting for complainant in securing this license, and that, having gone in under the license, complainant could not become a purchaser of an outstanding title.

We think this contention fails, for the reason that we do not find that the license covered the land in question. We are satisfied that the lands referred to as held by trust deed from Boynton were the identical lands here involved. While the testimony of Mr. Jenison is not very clear, he does state that the writing he gave Jenner would be according to the facts as they were at that time. There is testimony of a surrender by Boynton of his contracts to Jenison, although the contracts are not produced; but it is evident from this testimony that this surrender must have been after the execution of the above license.

The record shows that, long before the original bill was filed, the defendant Winegar had parted with his title to the land. When brought into court, he disclaimed. But the complainant continued to prosecute his suit against him, and a decree was entered in complainant's favor against him, as well as against the other defendants, for costs. We think in this respect the decree was erroneous, and the defendant Winegar will be permitted to recover his costs of this court, and those incurred in the circuit after the filing of the disclaimer, to be taxed. In other respects the decree will be affirmed, and complainant will recover costs against the other defendants.

The other Justices concurred.