SANBORN, Appellant, *v.* LEWIS AND CLARK COUNTY ET AL., Respondents.

(No. 8,082.)

(Submitted June 30, 1941.   Decided October 2, 1941.   Rehearing denied
January 3, 1942.)

[120 Pac. (2d) 567.]

*Mr. Charles Davidson,* for Appellant, submitted a brief and he and *Mr. William F. Browning,* of Counsel, argued the cause orally.

4

*Mr. Harold K. Anderson* and *Mr. Floyd O. Small,* for Respondents, submitted a brief; *Mr. Small* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an appeal from a judgment for the defendants in an action to quiet title to real estate. The complaint is in the usual short form, alleging ownership by plaintiff and unfounded claim of title by defendants, with prayer for adjudication quieting the title in plaintiff as against the defendants. There are three defendants, Lewis and Clark county, Alexander B. Johnstone and Mrs. Johnstone, his wife. There is no joinder of unknown defendants. Lewis and Clark county defaulted and Johnstone and his wife alone made answer. By such answer they denied the plaintiff's claim of title and admitted that the defendants, Lewis and Clark county and themselves, claim title or interest in the real property in question, and pray that the plaintiff take nothing by his complaint and that they recover costs, and for general relief.

Upon the trial of the case, which was before the court without a jury, the plaintiff offered proof of his title and to show unfounded claim of title by defendants plaintiff offered in evidence a tax deed of the premises running to Lewis and Clark county, together with an abstract of the tax title proceedings for the purpose of showing irregularities therein rendering the tax deed invalid. The interest in the property claimed by the defendant Johnstone and his wife was under a contract for the purchase of the property from Lewis and Clark county, this contract also being offered in evidence by the plaintiff. The only claim of title over which there is controversy is that resting on the tax deed.

The defendants objected to the evidence so offered in regard to the tax deed on the ground that the question of the validity of the tax title proceedings and the tax deed were not an issue

in the case; that the offer of such evidence constituted an attempt at a collateral attack upon the tax deed, the contention being that the validity of a tax deed may not be questioned in an action to quiet title under a mere allegation that the holder of the tax deed, or those claiming under it, assert an unfounded claim of title; that a tax deed may be questioned only by direct attack for its removal as a cloud on the title and wherein the infirmities and defects and irregularities of the tax sale proceedings or tax deed application must be specifically pointed out, and that the procedure for such purpose should be under section 8733, Revised Codes, and not under section 9479, Revised Codes. The evidence was received without any objection as to its competency but over the objection that it was irrelevant and immaterial, relating to a question not at issue in the case.

There are two methods of applying for and obtaining a tax deed in this state, one, the ordinary statutory method, (section 2209, Revised Codes) in which the tax purchaser makes application to the county treasurer for the deed, after giving notice of the application to the land owner and others interested in the title. In this method the proceeding is wholly ex parte, except in the giving of notice to give opportunity for redemption, and the courts have no part in the proceeding. The other method, (Secs. 2215.1-2215.8), an action may be brought in the district court to obtain the tax deed, the action being commenced and prosecuted in all respects the same as the ordinary civil action with judgment ordering the issuance of tax deed to the plaintiff. The holder of the tax sale certificate has the option of which method he will employ. In the instant case the application for the tax deed was made to the county treasurer under the ordinary statutory method and not by court action.

From the proof offered and received in respect to the tax deed upon the trial of the case the following defects and irregularities in the tax title proceedings appear and upon

6

which the plaintiff rests his contention that the tax deed is invalid:

(1) The tax sale certificate, dated July 24, 1931, says that the tax sale was held on July 22nd, 1931, and the notice of application for tax deed, as well as the tax deed itself, says that the sale was held on January 22nd, 1931.

(2) The tax sale was for taxes delinquent for the year 1930 and the notice of application for tax deed which was dated November 1st, 1935, showed 1929 taxes delinquent and includes the amount thereof in the statement of the amount required to be paid in order to redeem, and 1935 delinquent taxes are likewise shown in the notice of tax deed application as part of the amount required to be paid in order to redeem.

(3) The notice of application for tax deed is dated November 1, 1935, and states that the deed will be applied for on December 31, 1935.

(4) The only proof of service of the notice of application for tax deed is an unsworn statement by the deputy county clerk and recorder that it was served on November 16, 1935, and the abstractor's report that the notice was mailed to Bruce W. Sanborn, c/o C. H. Campbell & Sons of Great Falls, Montana, and a registry return receipt showing that the notice so mailed was received by George H. Campbell at Great Falls, Montana, on November 11, 1935. It was shown by oral testimony that Sanborn was a nonresident of the State and that C. H. Campbell & Sons were his agents within the State.

The plaintiff, upon hearing on an order to show cause, was required to make a deposit of $1,213.41 to protect the purchaser for taxes paid and cost of improvements made upon the premises and expenditures for the protection of the property during the period of possession by the defendant as required by section 2214, Revised Codes. Question is raised as to the correctness of certain items included to make up this sum, the determination of which becomes material in the disposition of the deposit if the plaintiff prevails.

The court found for the defendants and a decree was entered adjudging the defendant Alexander B. Johnstone to be the equitable owner in possession of the premises and entitled to possession thereof, and that the plaintiff and those claiming under him have no right, title nor interest in the property in question. The decree is based on the finding of the court that the defendant Lewis and Clark county has title under a tax deed valid on its face and which could not be attacked by showing defects and irregularities in the tax sale and tax title proceedings, and that the defendant Alexander B. Johnstone is in possession of the premises under a valid and subsisting contract for the purchase of the property from the county.

The questions determinative of this appeal are, first, whether the validity of the tax deed as dependent upon the irregularity of the tax title proceedings, may be inquired into in the action as brought to quiet title, and, second, if it may be, whether the defects and irregularities in the tax title proceedings are such as to render the tax deed invalid.

The distinction in the remedies as provided by the two sections of the Revised Codes, 8733 and 9479, is pointed out in the case of *Slette v. Review Pub. Co.*, 71 Mont. 518, 230 Pac. 580, 581, where the court says that "Proceedings under this section [9479] are not aimed at a particular instrument, but at the pretensions of individuals claiming adversely," whereas under section 8733, as stated in *Poulos v. Lyman Bros. Co.*, 63 Mont. 561, 208 Pac. 598, 599, "It is directed to a particular instrument which is dangerous to plaintiff's rights, and the object of the action is to have the instrument canceled and the cloud cast by it removed."

The proceedings such as may be maintained under section 9479 and that under section 8733 have been spoken of interchangeably by this court and by textwriters generally as of like nature and like ultimate purpose, namely, the clearing of title. (*Heinecke v. Scott*, 95 Mont. 200, 26 Pac. (2d) 167;

5 R. C. L. 634, 643.) The distinction is in procedure and scope of inquiry. The remedy under section 8733 is narrower, limited as against a particular instrument, and the complaint in a proceeding thereunder must point out specifically the grounds relied upon to establish its invalidity and its menace to the title. Section 9479 permits inquiry into the whole title of the property in question. All persons claiming adversely to the plaintiff may be cited in and adverse claims of title of all kinds may be inquired into, the purpose being to enable the plaintiff to quiet his title as against unfounded claims of all nature. The remedy provided is a more easy and expeditious mode of clearing title than under the old chancery system, enlarging the power of the court to determine all manner and any number of adverse claims to land and to quiet title thereto. (5 R. C. L. 643.) Under our section 9479 the court is given unusually broad powers in such a proceeding, including the power to remove clouds from the title and to cancel instruments of title as incidental and as may be necessary to the main purpose of quieting the title.

Here, while the tax deed is at the basis of the controversy which has arisen, the relief which the plaintiff seeks is not alone a cancellation of the tax deed. What the plaintiff wants is a decree silencing the defendants in their claims under pretensions of title. In selecting the remedy the plaintiff might well have felt that the cancellation of the tax deed alone might not have afforded complete relief. There were several defendants, the county holding a tax deed and Johnstone and his wife in possession of the premises and claiming the right to possession and occupancy adversely to the plaintiff. It was only by a proceeding wherein all possible claims of title of these several defendants could be inquired into that the plaintiff's title might be fully quieted as against all these defendants. The plaintiff chose to proceed under section 9479 as affording the more full and complete remedy.

The language of section 9479 is broad enough to show clearly

the legislative intent that in the proceeding provided for, all manner of adverse claims of title shall be subject to adjudication. And section 9487 provides that upon service of summons on all the defendants "the court in which such action is tried shall have jurisdiction to make a complete adjudication of the title to the lands named in the complaint, and the title to which is sought to be quieted, including jurisdiction to direct the cancellation of instruments constituting clouds upon such title."

While title claims of all kinds may be considered, a judgment affecting the title rendered by a court of competent jurisdiction cannot be disturbed in such proceeding. Assertion of title as established by such judgment cannot be said to be an unfounded claim. The controversy there already has had judicial inquiry. And so deeds or other instruments affecting the title, executed pursuant to the order of any such judgment, likewise must stand as against any such attack. (*Thompson* v. *Chicago, etc., Railroad Co.*, 78 Mont. 170, 253 Pac. 313; *Price v. Skylstead,* 69 Mont. 453, 222 Pac. 1059; *Burke* v. *Inter-State, etc., Ass'n.,* 25 Mont. 315, 64 Pac. 879, 87 Am. St. Rep. 416.) To obtain relief against such a judgment, a direct proceeding provided by law for the purpose must be resorted to. It is not subject to collateral attack. An attempt to set aside a judgment or title instruments executed pursuant to the order of such a judgment in a proceeding to quiet title is a collateral attack upon the judgment and is governed by the rule against collateral attack. (*Thompson* v. *Chicago, etc., Railroad Co.,* supra.)

The question here is whether the rule against collateral attack upon judgments applies to tax deeds. The contention of respondents is that it does and that therefore the validity of the tax deed cannot be questioned in this proceeding to quiet title regarding the proceedings as a collateral attack.

The rule against collateral attack has developed in the law of judgments and its application in the law of tax titles arises

where assessments are made and property is sold for delinquent taxes in proceedings of a judicial nature and under court sanction. (Cooley on Taxation, 4th Ed., sec. 1380; *Munroe* v. *Winegar,* 128 Mich. 309, 87 N. W. 396; *Brown* v. *Bonougli,* 111 Tex. 275, 232 S. W. 490; *Jones* v. *Gillis,* 45 Cal. 541; *State* v. *Sargent,* 12 Mo. App. 228; *Indiana, etc., Co.* v. *Milburn,* 8 Cir., 161 Fed. 531.) While there is some authority for the application of the rule where tax title proceedings are handled entirely by administrative officers, we find that in the cases so applying the rule the proceedings have been considered as being of the nature of judicial proceedings because of the requirements of the law for notice, delays and other formalities intended as safeguards for the taxpayer, as in *Shannon* v. *Lane,* 33 La. Ann. 489, and *Duffy* v. *Peneguy,* 148 La. 407, 87 So. 25.

This court in the case of *Richardson* v. *Lloyd,* 90 Mont. 127, 300 Pac. 254, 256, has said that "A tax title resulting by our statutory method has the same effect in this state as though accomplished through the judgment or decree of a court, and, when regular on its face, as here, is not subject to collateral attack." The respondents rely upon this statement by this court as the law in this state and as controlling in the instant case.

The *Richardson case* was not an action to quiet title. There suit was brought to recover on a promissory note which had been secured by mortgage on real estate. The real estate has been sold for taxes and had gone to tax deed and so the mortgage security was gone. The defendants sought to establish the invalidity of the tax deed, leaving the title still subject to the mortgage, which would prevent the plaintiff from maintaining his action on the note alone so long as the mortgage security remained intact. This was held to be a collateral attack upon the tax deed which could not be maintained. The question there arose in an entirely different manner from that in an action to quiet title, and was wholly collateral to the main

question in the action which was whether the plaintiff was entitled to recover on the debt represented by the note. What the court decided in that case was that a tax deed, valid on its face, must be taken as an effective transfer of title until its invalidity has been established in a proceeding appropriate under the law for that purpose. In view of the difference in the character of the attack and also because of the clear legislative intent, as will be later pointed out, the language of that decision cannot stand as applying in an action to quiet title.

The distinction in the character of attack made upon a tax deed, when it arises in an action which has for its purpose the clearing of title, and where it arises in other actions, is pointed out in the case of *Hickman* v. *Dawson*, 33 La. Ann. 438. In that case the plaintiff brought a suit to establish his title to certain real estate, alleging in general terms title in himself and illegal possession and claim of title by defendants. Defendants filed an answer wherein they denied generally the plaintiff's claim of title and then set up title to the property in themselves under a tax deed. The trial judge sustained the defendant's objection to evidence of irregularities in the tax title proceedings as a collateral attack upon the tax deed. The appellate court held this was error. The question arose in essentially the same way as in the case we have here for consideration. The objection to the evidence excluded was:

"Because plaintiffs had not alleged such irregularities, or nullities sought to be established in the tax-deed, and because it is not competent to consider collaterally any such nullities not patent on the face of the tax-deed." The court in disposing of the question says:

"We have carefully examined the numerous authorities which he [district judge] quotes in support of his conclusion, and have read with interest his able review of the jurisprudence on the validity of tax-sales, when attacked collaterally.

"But the authorities which he cites are predicated upon cases

where the validity of the tax-deed was attacked by a third person, seizing the property of his debtor, without regard to the expropriation of the debtor's property under a tax-sale. In such cases, when the purchaser under such a sale, appeared in the proceedings and exhibited his tax-deed, it was properly held, and it is now the settled rule, that such sale could not be attacked collaterally for any latent defect, or unless the deed itself discloses on its face the absolute nullity of the sale. (*Coco* v. *Thienman,* 25 [La.] Ann. [236], 237; *Lannes* v. [*Workingmen's*] *Bank,* 29 [La.] Ann. 112; *Jurey & Gillis* v. *Allison,* 30 [La.] Ann. [1234], 1235; *Renshaw & Cammack* v. *Imboden,* 31 [La.] Ann. 661.)

"A different rule applies in a petitory action where plaintiff alleges title in himself, and in which defendant to resist him successfully must show a better title in himself.

"In such a case, all matters of defense set up in the answer must be considered as open to every objection of law and fact, as if such objections had been specially pleaded. * * *

"In applying this rule to the present case we do not lose sight of the provision in the Constitution of 1868, requiring courts of justice to receive tax deeds as prima facie evidence of a vadid sale.

"We have given full effect to this rule, in maintaining the tax sale set up in the answer, as prima facie valid, but we must allow to plaintiff in his petitory action all the weapons of attack which are afforded to him by law.

"In our opinion the District Judge erred in excluding the testimony offered by plaintiffs, for the purpose of showing the nullity of their adversary's tax title; and we shall **remand** the case on that ground."

In *Moores* v. *Clackamas County,* 40 Or. 536, 67 Pac. 662, 663, a tax title case in all essentials the same as the case at bar, the court speaks of the choice of remedies as available to the plaintiff and says:

"Now, in many instances it is undoubtedly true that the object to be obtained may be accomplished by the adoption of either remedy. In one case the plaintiff sets up the facts showing the cloud and its invalidity, while in the other he calls upon the defendant to set up the character and nature of his claim, and it may be adjudicated upon and its legal effect determined, and thereby have the plaintiff's title quieted. The plaintiff has preferred the latter mode of procedure in the present instance."

And further: "The remedies are so near of kin that the plaintiff has his choice which to adopt. If he wishes to proceed as for a removal of a cloud, his complaint must disclose such a state of facts as will reveal the existence thereof, under the authorities; but, if he proceeds under the statute to determine an adverse claim, his complaint must show a cause on that theory, and the defendant must disclose his claim or interest, and, if it consists in a technical cloud upon plaintiff's title, we see no reason why he should go out of court and begin anew, when it is shown that he has a clear right to relief, and a court of equity has jurisdiction of the subject-matter. The relief is the same in either event, which is that the plaintiff's title be cleared of the incumbrance or quieted. The decree in this case should simply restrain the defendant from the assertion of any claim, right, or title under and by virtue of the certificates of sale and the tax proceedings upon which they are founded. We do not desire to be understood as enjoining the county from asserting its right, if it has any, to assess a valid tax against these premises and collect it."

In both of the foregoing cases the reasoning of the court is sound and the conclusions reached are logical, and appear to us as applicable to tax title litigation in this state. While the irregularities relied on as invalidating the tax deed are spoken of as occurring in the tax sale proceedings rather than in the application for the tax deed, the principle of law discussed is the same.

In the case of *Cullen* v. *Western, etc., Title Co.,* 47 Mont. 513, 134 Pac. 302, 307, while the question there arose in a somewhat different manner and is not exactly the same as it here arises, the court there says that there is no essential difference in the ultimate purpose of the litigation whether it be carried on under the provisions of section 9479, Revised Codes (then Sec. 6870, Rev. Codes 1907), or under section 8733, (then Sec. 6115), and that when action is commenced under section 9479 and the title claim of the defendant rests on a tax deed, the action should be considered as an attack upon the tax deed. While the case there was finally submitted on an agreed statement of facts such as might result in a change in the form of the action, the court speaks of the action to quiet title as there brought as "designing to accomplish precisely the same thing" as if brought "to set aside or annul a tax deed," and this was pointed out as one of the vital matters of consideration in the disposition of the case.

In addition to the broad scope of inquiry provided for by section 9479, and its evident purpose of covering all adverse title claims not resting upon any former adjudication, and regardless of the classification that may be given the resultant proceeding as a collateral or a direct attack, we believe that the legislature has clearly evinced the intent that the validity of a tax deed may be inquired into in an action to quiet title. Aside from the broad language of section 9479 the tax title statutes themselves refer to actions to quiet title as modes of inquiry into the validity of tax deeds and specially provide certain things that must be done in such proceedings with respect to tax deeds.

Thus in section 2214 it is provided that in any action "brought to set aside or annul any tax deed, or to quiet title, or to determine the right of such purchaser," the person attacking a tax deed in any such proceeding must upon application of the tax title purchaser deposit certain sums with the county treasurer as protection to the tax purchaser, and provides

further that "the title of such true owner [the former owner of the land] shall not be quiet [quieted?] as against said purchaser or his successors, and a decree shall be entered in said action quieting the title of said purchaser or his successor as against said true owner" if such deposit of money is not made. Clearly this language carries the thought that a tax title may be attacked in an action to quiet title inasmuch as this protective provision has been made to be followed in such proceeding.

The legislature has distinguished in section 2214 between an action to set aside or annul any tax deed and an action to quiet title, clearly indicating that the plaintiff has the choice of remedy. The only distinction there can be in the remedy in such case, aside from the difference in its scope, is in the matter of procedure. In the one remedy, under section 9479, the general allegation of title in the plaintiff and general allegation of unfounded claim of title by the defendant is all that is required to state a cause of action (*Teisinger* v. *Hardy*, 91 Mont. 9, 5 Pac. (2d) 219; *Slette* v. *Review Pub. Co.*, supra; *Merk* v. *Bowery Min. Co.*, 31 Mont. 298, 78 Pac. 519; *Pollock Min. & Mill. Co.* v. *Davenport*, 31 Mont. 452, 78 Pac. 768; *Ely* v. *New Mexico, etc., Railroad Co.*, 129 U. S. 291, 9 Sup. Ct. 293, 32 L. Ed. 688) while under section 8733 it is necessary to point out the specific grounds relied upon in the attack upon a specific instrument. Certainly where the legislature has shown that the plaintiff shall have the choice of remedy as may be most convenient to him, there could be no intention that in giving the right under section 9479 to the same relief as might be obtained under 8733, he should be required to embody into the proceeding any of the procedural requirements under 8733 different from that under 9479. This would lead to confusion and difficulty in procedure which the statute is intended to avoid. And section 2214, in addition to referring to the action to quiet title as one of the modes of procedure for attack upon a tax deed, says that when the purchaser at the tax sale or his successor in interest brings an action to quiet title

under the tax deed, the procedure shall be such as specified in sections 9479 to 9488. There can be no good reason why the procedure should be made more cumbersome when the validity of the tax deed is brought in question by the former owner of the land.

Respondents contend that in mentioning both remedies as possibly resorted to in an attack upon tax deeds, the legislature had in mind the one as being used in attack upon a tax deed valid upon its face, and the other in attack upon a tax deed void upon its face. We do not believe the legislature had in mind any such distinction in propriety of remedies. To read such purpose into this particular part of the Act would not be in harmony with the evident purpose of the Act as a whole as already pointed out.

We hold that the validity of a tax deed which has been issued by the county treasurer by application under the ordinary statutory method and without court action may be questioned and determined in an action to quiet title under section 9479, and whether its invalidity appears on the face of the deed or must be shown by reference to the tax title proceedings leading up to its issuance; and the question may be raised by the plaintiff under the short form of complaint, alleging in general terms title in the plaintiff and unfounded claim of title by the defendant; and that the plaintiff, under such a complaint, is entitled to introduce evidence of irregularities, defects and omissions in the tax title proceedings affecting the validity of the deed, as well as the deed itself, and all of which should be considered by the court in determining the validity of the deed.

The question of the validity of the tax deed was therefore properly made an issue in this case, and the evidence offered by the plaintiff of the tax title proceedings was material to the issue, and the court erred in excluding it from consideration and in refusing to consider the question of the validity of the tax deed.

The question then arises whether the irregularities and defects and omissions in the tax title proceeding, as shown by the evidence offered, are such as to render the tax deed invalid.

In applying for a tax deed under the ordinary statutory method, the matter of importance is the giving of notice of the application. The purpose of the notice is to warn the land owner, and others interested, of the impending issue of the tax deed and the termination of the right of redemption coincident therewith. The giving of the notice is jurisdictional and unless the requirement of the law in respect to such notice is complied with and proven by affidavit filed with the county treasurer, the tax deed should not issue. The statute, section 2212, Revised Codes, so provides.

The requirement as to notice is set forth in section 2209, Revised Codes. The holder of the tax sale certificate, must, at least sixty days before he applies for the deed, serve written notice upon the owner of the property if known, and upon the person occupying the property if it is occupied, stating that the property has been sold for delinquent taxes, giving the date of sale, the amount of property sold, the amount for which it was sold, the amount due, the time when the right of redemption will expire, or when the purchaser will apply for tax deed. The notice must be served also upon the holder of any unreleased mortgage of record, by registered mail or by publication if the address does not appear in the county recorder's records. In case of unoccupied property, the notice must be sent by registered mail to any known owner residing in or outside of the county. If the address is not known, the notice must be published. The publication of the notice must be for two successive weeks in a newspaper published in the county, and the first publication must be made at least sixty days before the deed is applied for. Proof of the service of the notice, in whatever manner given, supported by affidavit, must be filed immediately with the county clerk and recorder.

From examination of the evidence respecting the notice of

application for the tax deed, as it has already been set forth herein, it appears clearly that the requirement of the law as to notice was not complied with. The statement of the county clerk and recorder, not being sworn to, is no proof at all, and even if the statement were to be considered, it shows nothing to have been done until November 16th, far short of the sixty-day period. The proof of mailing notice to the land owner is insufficient. It does not show when the notice was mailed, the only date throwing any light thereon being the date of its receipt by an agent of the owner on November 11, 1935, indicating that the actual mailing was short of the sixty-day period. The defects and deficiencies in the service of the notice are so many, in fact not a single item of requirement of the law as to notice was complied with, that we have no hesitancy in saying that the notice required by law was not given. Therefore the tax deed should not have been issued by the county treasurer and the deed is void.

Respondents cite the case of *Glacier County* v. *Schlinski*, 90 Mont. 136, 300 Pac. 270, 272, where the court in its opinion says that "in attacking a tax deed it is necessary to point out clearly and specifically, and in apt terms, the particular defects on which the pleader relies to defeat the deed." There the attack was made by defendant in his answer and wherein he referred to the tax deed as the basis of the plaintiff's claim of title and undertook to point out in the pleading the invalidity of the deed because of defects in the tax sale and procedure in applying for the tax deed, and the allegations were held insufficient. The pleading there appears to us as more in the nature of a direct attack as under section 8733. But whatever may then have been the conception of the law, we hold that the requirement as to pleading, as quoted above from the *Glacier County case*, is restricted to actions brought under section 8733, Revised Codes, and wherein the litigant undertakes to show in his pleading the defect in the tax title proceedings which render the deed void.

Respondents contend also that regardless of the question of admissibility of the evidence, the court, after hearing all the evidence offered in the case, has held the plaintiff's allegations as to defects in the tax title proceedings and invalidity of the tax deed without merit and that the tax deed is valid; and that these findings of the district court are conclusive and are binding upon this court. There is no merit in that contention. The controversial question decided by the lower court was purely a question of law. There was no dispute in the facts. The error was in application of the law to the facts.

There is no validating Act which cures the defects in the service of the notice in this case. Respondent cites Chapter 132, Laws of 1937. That Act relates only to mistakes in stating in the notice the amount due and required to be paid in order to redeem. Here there are defects and omissions in the service of the notice, such as to show a complete failure to follow the requirements of the law in that respect, and which render the tax deed application proceedings clearly insufficient without regard to the statement in the notice of the amount required to redeem.

As to the deposit required of the plaintiff at the commencement of the action:

The item of $392 for payments made by defendant Johnstone to the county on the land purchase contract plaintiff agrees should be allowed, and this will stand.

The item of $109.55 for taxes paid, plaintiff says should be reduced to one-fifth thereof. The contention is that inasmuch as only one-fifth of the purchase price under the contract had been paid, only the one-fifth interest in the land was subject to taxation and not the land in its entirety as was done; that therefore only one-fifth of the amount of the tax imposed and paid was a legal tax and which could be required in the deposit. Section 2214, Revised Codes, says that the deposit to cover taxes shall be in "the amount of all taxes,

interest and penalties which would have accrued if said property had been regularly and legally assessed and taxed as the property of said true owner and sold for delinquent taxes and was about to be redeemed."

Section 2208.1, Revised Codes, says that lands acquired by the county at delinquent tax sales shall, within six months thereafter, be disposed of at public sale, and if not disposed of at such sale, may thereafter be sold at either public or private sale and on terms, or exchanged for other lands or leased out. And section 2208.2, Revised Codes, provides that all moneys received from the sale or leasing of any such lands, or of any lands received in exchange, shall be paid into the county treasury and shall be credited to each fund as the same would have been credited had the moneys so received been paid as taxes upon the said lands, and any surplus to belong to the county. The purpose being that lands removed from the tax rolls by the county acquiring title shall not be permitted to lie dormant but shall be sold or leased to produce the delinquent taxes and, by sale, if possible, restored on the tax rolls. Section 2208.1 provides further as follows:

"If a sale is made on terms, the chairman of the board of county commissioners shall execute a contract in behalf of the county, and upon the payment of the full purchase price, together with all interest and taxes, the chairman of the board of county commissioners shall execute a deed to the purchaser, or his assignee conveying the title of the county in and to the lands so sold.

"On the first Monday in March following the execution of such contract, the lands shall be subject to taxation in the name of the purchaser, or his assignee, and in the event the taxes are not paid, and the same become delinquent, said contract shall stand cancelled and all payments theretofore made shall be taken, treated and regarded as rent for said property."

As already stated, the purpose of the statute is to produce

tax revenue from the land. The purchaser from the county does not receive a deed until he has paid all taxes as well as the purchase price. Also upon the sale having been made by the county, the land is restored to the tax rolls on the following first Monday of March. The real purpose in specially providing in the Act for the restoration of the land on the tax rolls when sold on contract must have been to remove any question that might arise because of the legal title still being retained in the county. Had the purchase price been paid in full and title transferred by deed from the county, the lands would immediately have been restored to the tax rolls under the general statute with respect to property liable for taxation.

Under the statute as referred to and cited from, the land became subject to taxation when sold by the county although full purchase price had not been paid; the purchaser was required to pay such taxes or lose his contract, and also before obtaining his tax deed, he was required to pay all taxes that were a lien against the land. Section 2210, Revised Codes, provides that in redemption of property from tax sale, the redemptioner must pay, not only the amount for which the land was sold at the tax sale, but also all subsequent taxes paid by the purchaser at such sale or his assignee, with interest.

It is clear that the whole of the item of $109.55, which covers taxes levied upon the land, following the purchase from the county, was properly included in the deposit required, all of which the former owner of the land would be required to pay if he were to redeem from the tax sale.

The additional sum of $711.86 the court says in its order is "the amount reasonably paid and expended by the said Alexander B. Johnstone after three years from the date of said tax sale, in preserving said property and in making improvements thereon while the said Alexander B. Johnstone had been in possession thereof." The much larger sum of $2,698.75 was claimed by Johnstone, made up of many items of expenditure of money and labor. Considerable evidence

went in from both sides as to these various items leaving much of it in dispute.

Johnstone, at the time of the tax sale, was in possession of the property under a lease from Sanborn, and has remained in possession throughout the entire period since the tax sale. Under his lease he was required to look after the premises and make certain improvements, and appellant contends that because of such tenant relation, when the tax deed is declared to be void, Johnstone can make no claim for improvements and money expended in protection of the property, for that was required of him under the lease. Also it is contended that the rental value of the premises during the period of occupancy since the issuance of the tax deed should be deducted from the amount allowed.

There were improvements made and money expended other than such as required by the lease, and a sufficient amount of it after the issuance of the tax deed to make up the amount allowed. All these matters were presented to the trial court, and the sum of $711.86 was determined upon as reasonable under the facts and circumstances presented. Respondents made proof of items totaling the larger sum of $2,698.75 as claimed. The findings do not show how the court arrived at the lesser sum of $711.86, and it cannot be determined therefrom whether improvements required under the lease, or the rental value of the premises, were taken into account. There was no request for specific findings showing allowances and deductions made so as to reserve those questions for review, and we find nothing in the record, and upon the issues as made, which would justify this court in disturbing the finding of the trial court upon this point in the case. (Secs. 9369 and 9370, Rev. Codes; *Joyce* v. *McDonald,* 51 Mont. 163, 149 Pac. 953.)

The order of the district court requiring the deposit of $1,213.41 will stand.

The judgment is reversed and all of the deposit made by

the plaintiff at the commencement of the action is ordered to be paid to the respondents.

MR. CHIEF JUSTICE JOHNSON and MR. JUSTICE ERICKSON, concur.

MR. JUSTICE ANGSTMAN, dissenting in part:

On petition for rehearing I have given further consideration to this case and I am persuaded that what we should do with it is to send it back for a new trial on the ground that, whether the attack is direct or collateral, the pleadings must advise the adverse party of the particular defects relied upon for setting aside the tax title. In *Glacier County* v. *Schlinski,* 90 Mont. 136, 300 Pac. 270, we said: "One who attacks a tax deed as invalid must in his pleading point out clearly and specifically, and in apt terms, the particular defects on which he relies." This seems to be the universal rule in actions to quiet title. (61 C. J. 1441, note 33.) Whether the rule is good or bad, when it is pronounced by this court as the rule in this state, litigants and their counsel have the right to rely upon it.

Here there was no intimation in the pleadings that there would be an attack upon the tax title, or, if so, on what ground the attack would be based. Here defendant Johnstone in his answer did not set forth the nature of source of his title. Plaintiff should have required him to do so by motion to make the answer more definite and certain in that respect. (51 C. J. 234, note 56.) Plaintiff then should, by his reply, have advised defendant of the particular defects in the tax deed relied upon by him; or plaintiff might have anticipated defendant's claim and pointed out its defects in his complaint.

I think the cause should be remanded for new trial after proper issues are raised by appropriate pleadings pointing out the defects in the tax deed proceedings relied upon by plaintiff.

On the question of the amount of the deposit I agree with the modification made on petition for rehearing.

MR. JUSTICE MORRIS:

I concur in the views of MR. JUSTICE ANGSTMAN.